## No. 23672

### Farmers Acceptance Corporation v. Howard K. DeLozier, d/b/a Howard K. DeLozier Construction Co.
(496 P.2d 1016)

Decided May 15, 1972.

Phelps, Fonda, Hays, Farley, Abram & Shaw, Donald E. Abram, for plaintiff in error.

Warberg & Mast, Sonja E. Warberg, for defendant in error.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This writ of error arises out of a complaint filed by a materialman, Ladd Lumber Company, against a general contractor, Howard K. DeLozier, to recover the cost of materials which were supplied to John Diviney, a subcontractor of DeLozier. A third-party complaint was filed by DeLozier against Farmers Acceptance Corporation (hereinafter referred to as "FAC"), the assignee of Diviney's rights under the DeLozier-Diviney contract. DeLozier thereby sought to recover from FAC monies he had paid pursuant to the contract but which had not been applied in payment of the bill owed by Diviney for materials he used in performing the DeLozier contract. The trial court entered judgment in the amount of $2,865.63 in favor of Ladd Lumber Company and against DeLozier for all materials supplied to Diviney and judgment in the amount of $1,574.86 in favor of DeLozier and against FAC for the monies it had obtained pursuant to the assignment. Thereafter, FAC filed this writ of error.

The record reveals that DeLozier was engaged as the general contractor for the construction of the Lathrop Park Youth Camp. DeLozier contracted with Diviney to install drywall on the project. Before beginning work, Diviney obtained a personal loan of $1,500 from FAC, for which he executed a promissory note. As security for the loan, Diviney assigned to FAC all his right, title, and interest in his contract with DeLozier. DeLozier was notified of the assignment by FAC prior to making all payments under the contract. Thereafter, DeLozier made one payment by check in connection with the contract in the amount of $1,844. The

check, which represented 35% of the total contract, was made payable to Diviney Drywall and FAC. FAC applied $1,574.86 toward payment of Diviney's personal note and the balance of $269.14 toward Diviney's account with Ladd Lumber Company for materials used on the Lathrop Park job. Approximately one month later, DeLozier notified Diviney that he was cancelling the contract because of Diviney's failure to continue on the job. Thereafter, DeLozier received a bill from Ladd Lumber Company for materials supplied to Diviney for the Lathrop Park project. The bill was not paid, and the suit which precipitated this writ of error was instituted.

Whether or not FAC is entitled to retain the $1,574.86 which it obtained from DeLozier is wholly dependent upon the law governing assignments and FAC's status as the assignee of Diviney's contract rights with DeLozier. In Colorado, the law pertaining to the assignment of contract rights, such as are involved in this case, is set forth in the Colorado Uniform Commercial Code. C.R.S. 1963, 155-9-102(2). Under the law of assignments, it is a well settled principle that the right to receive money due or to become due under an existing contract may be assigned even though the contract itself may not be assignable. This principle has been codified in the Colorado Uniform Commercial Code, which provides that "[a] term in any contract between an account debtor and an assignor which prohibits assignment of an account or contract right to which they are parties is ineffective." C.R.S. 1963, 155-9-318(4). Application of this rule of law to the facts in this case results in the conclusion that Diviney had an absolute right to assign to FAC the money he expected to earn under his contract with DeLozier. Since the assignment was valid, the remaining question to be determined is the value of the rights assigned.

It is a general rule that an assignee of contract rights stands in the shoes of the assignor and has no greater rights against the debtor than did the assignor. The assignee is also subject to all the equities and defenses which could have been raised by the debtor against the assignor, with the exception

of those claims and defenses which are both unrelated to the underlying contract and arise after the debtor is notified of the assignment. *See McCormick v. Diamond Shamrock Corp.,* 175 Colo. 406, 487 P.2d 1333 '(1971); *Matson & Mulhausen Const. Co. v. Boulevard Nat'l. Bank,* 28 Colo. App. 427, 475 P.2d 356 (1970); *Denver United States Nat'l. Bank v. Asbell Bros. Const.,* 294 F.2d 289 (10th Cir. 1961); *Associates Loan Co. v. Walker,* 76 N.M. 520, 416 P.2d 529 (1966); *Restatement, Contracts* § 167(1) (1962). This position has been incorporated in the Colorado Uniform Commercial Code. The Code specifically provides that "the rights of an assignee are subject to:

"(a) All the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and

"(b) Any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment."

C.R.S. 1963, 155-9-318(1)(a)(b). "Claim," no doubt includes set-offs and counterclaims. *See* C.R.S. 1963, 155-9-318(1), Official Comment; *Restatement, Contracts* § 167(1) (1962); Gilmore, *The Assignee of Contract Rights and His Precarious Security,* 74 Yale L.J. 217, 229 (1964-65). *See also, Hudson Supply & Equipment Co. v. Home Factors Corp.,* 210 A.2d 837 (D.C. Ct.App. 1965).

By virtue of the assignment, FAC acquired nothing more than Diviney was entitled to under his contract with DeLozier. Diviney's right to payment under the contract was conditioned upon performance of the contract by the installation of drywall. Diviney's earnings were also subject to the burden of all the material bills incurred by Diviney in the performance of the contract. Diviney's failure to pay the material bills, coupled with their payment by DeLozier in accordance with the materialmen's lien statute, subjected Diviney to a claim by DeLozier for the amount DeLozier had to pay because of the lien filed by Ladd Lumber Company. Since the material bills exceeded the amount Diviney apparently earned under his contract with DeLozier, Diviney

was not entitled to any money under the contract. Indeed, under the stated facts, Diviney's liability to DeLozier arising out of the contract was approximately $1,300. FAC's rights under the assignment to money earned by Diviney pursuant to his contract with DeLozier were also subject to claims arising out of the contract. Consequently, FAC was not entitled to any payments which were made pursuant to the underlying contract and which were conditioned upon performance.

■ ,FAC was not, however, obligated to perform the contract upon Diviney's failure to perform. Neither was FAC liable for Diviney's indebtedness to DeLozier arising out of the contract. The reason is that an assignee of contract rights is not subject to the contract or tort liabilities imposed by the contract on the assignor, in the absence of an assumption of such liabilities. C.R.S. 1963, 155-9-317; 6 Am.Jur.2d *Assignments* § 109.

■ In instances such as this, where the assignee obtains money which the assignor could only retain upon performance of a contract, the following rule applies: "[W]here the assignor fails to perform the contract, the assignee cannot retain mistaken, or even negligent, payments made to it by the [debtor] unless there has been a subsequent change of position by the assignee." Gilmore, *The Assignee of Contract Rights and His Precarious Security,* 74 Yale L.J. 217, 235, n. 35 (1964-65); *see Firestone Tire & Rubber Co. v. Central Nat'l. Bank,* 159 Ohio St. 423, 112 N.E.2d 636 (1953). *See also, Westing v. Marlatt,* 124 Colo. 355, 238 P.2d 193 (1951). Here, there has been no showing that FAC changed its position and made further loans to Diviney on the basis of the payment received from DeLozier. Since there was no evidence that FAC relied to its detriment upon the payment made by DeLozier, the judgment of the trial court was proper and must be affirmed.

Judgment affirmed.

MR. JUSTICE GROVES dissenting.