694 P.2d 1217

**BUSINESS FINANCIAL SERVICES, INC., an Arizona corporation, Plaintiff-Appellee,**

v.

**AGN DEVELOPMENT CORPORATION, an Arizona corporation, Defendant-Appellant.**

**No. 1 CA–CIV 6650.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 27, 1984.

Reconsideration Denied Jan. 24, 1985.

Sacks, Tierney & Kasen by Lawrence J. Rosenfeld, Phoenix, for plaintiff-appellee.

Winston & Strawn by Richard W. Shapiro, Phoenix, for defendant-appellant.

## OPINION

JACOBSON, Chief Judge.

The central issue on this appeal, arising out of a garnishment action, is whether the trial court erred in refusing to grant an account debtor setoffs for monies paid after receiving notice of assignment by the account creditor of the debt.

Appellee, Business Financial Services, Inc., (hereinafter "BFS"), was a secured creditor of Bernardino and Maria Medina d/b/a Bernardino Concrete Construction Company (hereinafter "Bernardino"), and had taken a security interest in Bernardino's accounts receivable. Appellant, AGN Development Corporation, (hereinafter "AGN") was an account debtor of Bernardino, having contracted to pay Bernardino $9,935.25 to provide the concrete work on AGN's Ridgegate Construction project.

On July 8, 1981, BFS notified Bernardino that it was in default on its obligations to BFS. On this same date BFS notified AGN of its security interest in AGN's debt to Bernardino. On August 13, 1981, BFS took steps to foreclose its security interests and received a court order for the issuance of prejudgment writs of garnishment against various parties indebted to Bernardino, including AGN.[1]

A writ of garnishment was served on AGN on August 17, 1981. AGN filed an answer in garnishment admitting that it

---

**1.** Subsequently, on October 8, 1981, BFS obtained default judgment against Bernardino in the amount of $84,598.42 plus costs and attorney's fees.

had been indebted to Bernardino under the terms of a contract in the sum of $9,935.25, but claiming setoffs for amounts previously paid out under the contract in the amount of $7,020.19, leaving $2,915.06 available for garnishment. BFS filed an affidavit controverting the answer of AGN and a tender of issue in garnishment. BFS argued that AGN was improperly trying to setoff payments it had made after receiving notice of BFS' interest in the contract proceeds. BFS filed a motion for summary judgment against AGN for $9,466.27. AGN filed a crossmotion for summary judgment, seeking a determination that it was entitled to setoffs of $7,020.19 and requested its costs and attorney's fees. The trial court denied AGN's motion for summary judgment and granted summary judgment for BFS in the amount of $9,466.27.

AGN appeals to this court raising four issues:

(1) Whether AGN can be held liable for a payment it made under the Bernardino contract in the amount of $1,000.00 before it received notice of the security interest held by BFS;

(2) Whether AGN was entitled to make payments to materialmen and laborers because of the provisions of A.R.S. § 47–9310 (formerly A.R.S. § 44–3131); [2]

(3) Whether, after receiving notice of the security interest held by BFS, AGN was entitled to make payments to individuals and companies that supplied labor and materials in connection with the Bernardino contract in the total amount of $6,020.19.

(4) Whether AGN was entitled to an award of costs and attorney's fees as the prevailing party in this action.

**2.** By Laws 1984, Ch. 77, § 3, effective April 11, 1984, the legislature repealed Title 44, chapter 14, articles 1 through 9, Arizona Revised Statutes for the following purpose:

The purpose of this act is to renumber the uniform commercial code to correspond to the numbering of the official uniform com-

### PAYMENT PRIOR TO NOTICE

We first consider AGN's contention that it made a $1,000.00 payment under the Bernardino contract before receiving notice from BFS that any monies owed to Bernardino should be paid to BFS and therefore AGN should not be liable to BFS for this sum. BFS admits that if AGN had made a $1,000.00 payment for work performed under the contract prior to receiving the notice from BFS, AGN could not be held liable for such payment.

A.R.S. § 47–9318(C) provides that "[t]he account debtor is authorized to pay the assignor until the account debtor receives notification that the account due or to become due has been assigned and that payment is to be made to the assignee." The position taken by BFS, however, is that the $1,000.00 payment was made after AGN received notice and therefore § 44–3139(C) is not applicable. The trial court apparently so found.

BFS bases its post-notice payment contention upon two arguments: (1) that AGN made an admission in its answer in garnishment that all of the payments including the $1,000.00 payment at issue here were made after the notice of July 8, 1981, was received and (2) a letter from AGN's attorney stating the payment was made on July 10, 1984. Turning to the first contention, suffice it to say we have reviewed AGN's answer in garnishment and find no language that can be interpreted as an admission that the $1,000.00 was paid after notice was received on July 8, 1981. The answer in garnishment merely states that the advance of $1,000.00 was made in July, 1981, with no indication of whether it was made before or after July 8, 1981, the date notice was given.

 As to the second contention that AGN's attorney indicated that that particu-

mercial code. The only substantive amendments to the uniform commercial code contained in the enactment of this act are contained in sections 47–9301 and 47–9312, Arizona Revised Statutes, as added by this act. This opinion will refer to the renumbered statutes contained in A.R.S. § 47–1101 et seq.

lar payment had been made to Bernardino on July 10, 1981, AGN argues that the information presented in the letter concerning the $1,000.00 was erroneous. AGN produced a copy of a cancelled check for $1,000.00 was made payable to Henry M. Carrasco on a Norarm Properties account, dated June 19, 1981 and signed by John S. Norris, who is president of AGN. An affidavit from Norris was submitted which stated that the check had been issued on the Norarm Properties account to Henry M. Carrasco on that date at Bernardino's request as partial satisfaction of the amount due on the contract between AGN and Bernardino. No evidence was presented contraverting these facts. Based upon this record, no factual dispute exists that the $1,000.00 payment to Carrasco was made prior to July 8, 1981.[3]

### PAYMENT AFTER NOTICE FOR LABOR AND MATERIALS

We next consider AGN's arguments that it should have been allowed to claim setoffs for payments totaling $6,020.19 made to laborers and materialmen in connection with the Bernardino contract even though it had received notice of BFS' claim to the contract proceeds prior to making the payments. On July 8, 1981, AGN received notice that BFS held a security interest in Bernardino's accounts receivable and that Bernardino was in default. On August 10, 1981 AGN disbursed a joint check for $5,551.21 to Bernardino and Fastway for materials supplied by Fastway to the Ridgegate project. Throughout July and August, 1981, AGN had disbursed additional checks totaling $468.98 directly to other materialmen and laborers on the Ridgegate project under the Bernardino contract. AGN argues that it was entitled to setoff these payments for labor and materials supplied to the project both under its con--

tract with Bernardino and because of the provisions of A.R.S. § 47–9310.

#### a. A.R.S. § 47–9310: Priority of Possessory Liens

We first consider whether A.R.S. § 47–9310 provides any assistance to AGN. This statute provides:

When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.

 This statute addresses the priority of security interests in goods to which services or materials have been supplied. The statute provides, in general, that a lien upon the goods in the possession of the person supplying the services or materials has priority over other kinds of perfected security interests in the goods. For each of the reasons stated by BFS, we find this provision to be inapplicable to the situation presented in this case. First, there are no facts in the record showing that the materialmen and laborers who received payment from AGN had ever filed a lien. Second, § 47–9310 applies only to possessory liens, those in which the person providing the services or materials possesses the collateral. Third, § 47–9310 applies only to security interests in "goods." Accounts receivable, the collateral in this case, are not considered "goods" as indicated by A.R.S. § 47–9105.

#### b. A.R.S. § 47–9318: Contract Defense

 We now turn to AGN's argument that it was entitled to setoff payments made for materials and labor supplied by third parties pursuant to the terms of its

**3.** At time of oral argument BFS points out that this check was returned for insufficient funds and therefore there is a fact issue as to when the check was actually paid. Such a fact is immaterial. AGN by issuing its check on June 19, 1981, converted what was formally an obligation of Bernardino to its personal liability, which Carrasco could enforce directly against AGN. Under these circumstances, AGN made a "payment" on behalf of Bernardino, regardless of when Carrasco actually received his money. See A.R.S. §§ 47–3305; 47–3413; 47–3419.

contract with Bernardino. A.R.S. § 47–9318 provides, in general, that the rights of an assignee are subject to:

1. All the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and

2. Any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.

Here, although the contract provided for payment of $9,935.25 to Bernardino for the work it was to perform, the contract also contained the following restriction concerning payment to Bernardino:

4. PAYMENT: Company shall make payments provided for in Schedule B within twenty (20) days after receipt of written application for payment, in a form acceptable to the Contractor, together with evidence satisfactory to Contractor that all indebtedness for labor, equipment, materials and services has been discharged. Company *reserves the right* to make any payments directly to materialmen, subcontractors or laborers, and deduct said amounts from the balance owing to Subcontractor by the Contractor. (emphasis added)

AGN argues that BFS, as Bernardino's assignee, took the contract subject to the reservation in the contract that AGN could pay materialmen and laborers directly and deduct such payments from the amount due to Bernardino. We agree.

AGN's valid contract defense is illustrated by the case of *Associates Loan Company v. Walker*, 76 N.M. 520, 416 P.2d 529 (1966). In that case Walker had executed a written contract with Partin to purchase a water softener for use in Walker's dairy farm. The parties agreed that there would be no sale and the contract would not be effective unless the water softener served to increase Walker's milk production. After the device was installed it was determined that the water softener had not and would not increase milk production. Therefore, the Walkers made no payments upon the contract. Meanwhile, Partin had caused its interest in the Walker contract to be assigned to Associates Loan Company. Associates brought suit against Walker on the contract. Walker argued pursuant to the section of the New Mexico commercial code, similar to Arizona's A.R.S. § 47–9318, that its contract defense against Partin also applied against its assignee. In finding that Associates was not entitled to payment from Walker, the New Mexico Supreme Court held:

The fundamental rule of law, unchanged by the quoted section of the Uniform Commercial Code, is that an assignee of a chose in action acquires by virtue of his assignment nothing more than the assignor had and all equities and defense which could have been raised by the debtor against the assignor are available to the debtor against the assignee.

This rule is so well recognized and settled that it needs no authoritative support. In our opinion, under both the statute and the rule of law, if the contract in Partin's hands was subject to a condition precedent under which it was not to become effective until the happening of a contingency, upon assignment the assignee took the contract subject to the same condition. The trial court correctly held that the defense raised by Walker was available against the assignee, Associates.

*See also Farmers Acceptance Corporation v. DeLozier*, 178 Colo. 291, 496 P.2d 1016 (1972); *Denver United States National Bank v. Asbell Bros. Const.*, 294 F.2d 289 (10th Cir.1961).

■ Similarly, in this case, the agreement states in unequivocal terms that Bernardino did not have an unconditional right to payment. Payment was contingent both on a condition precedent and a reservation of rights in AGN. BFS argues, however, that since AGN was under no legal obligation to pay materialmen or subcontractors, AGN became a mere volunteer in making these payments and could not defeat BFS' secured interest. We disagree.

Bernardino was to receive payment under the contract only if it presented evidence that all indebtedness for labor, equipment, materials and services had been discharged. AGN had also reserved the right to pay the materialmen, subcontractors or laborers directly, subtracting these payments from the amount owed to Bernardino. Since Bernardino had no right to prevent AGN from paying laborers and materialmen who had not been paid and deducting the amount due to Bernardino, BFS as Bernardino's assignee had no greater right to do so. The need for such a provision in a construction agreement is based on Arizona law which allows laborers and materialmen to impose a lien on a construction project for labor and materials they have supplied but for which they have not been paid, thus subjecting AGN to double payment. *See* A.R.S. § 33–981. BFS' assignment cannot invalidate this important contractual right reserved by AGN.

■ BFS' argument appears to be that once it had given notice of its assignment, the account debtor could no longer make payments directly to the laborers and materialmen. We find no basis for such an argument where AGN had reserved the right to pay the laborers and materialmen directly.

The cases cited by BFS in support of its claim that an assignee who gives notice of its interest must be paid instead of various other third parties are distinguishable. In *Manes Construction Company, Inc. v. Wallboard Coatings Company, Inc.*, 497 S.W.2d 334 (Tex.Civ.App.1973), the general contractor received notice that its subcontractor/creditor had assigned its accounts receivable to National Gypsum. Notwithstanding receipt of the notice, the contractor entered into an agreement, post-notice, with one of the subcontractor's suppliers to disburse to the supplier and the subcontractor jointly. The Texas court held that the contractor was not entitled to make that payment without remaining liable to National Gypsum for the sum paid out. *Manes Construction* stands for the proposition that an agreement to make payment

to a supplier entered into after notice of the assignment does not relieve the account debtor of an obligation to pay the assignee. This is clearly distinguishable from the instant case where the right to pay suppliers was a provision of the contract in existence before the account debtor received notice of the assignment. Similarly, *Bank Leumi Trust Company of New York v. Collins Sales Service, Inc.*, 47 N.Y.2d 888, 419 N.Y.S.2d 474, 393 N.E.2d 468 (1979), is inapplicable because it was not a case in which an account debtor had a defense arising out of its contract with the assignor.

■ BFS cites *Valley National Bank of Arizona v. Flagstaff Dairy*, 116 Ariz. 513, 570 P.2d 200 (App.1977), for the proposition that an account debtor is liable to pay the assignee after receiving notice of the assignment and that the account debtor who disregards the assignment and makes payment elsewhere remains liable to the assignee. We agree this is the law. However, it is inapplicable in a case in which defenses or claims arising from a pre-existing contract between the account debtor and the assignor are asserted.

■ BFS next argues that the payments made to the laborers and materialmen were payments to Bernardino's creditors and therefore should be treated as payments to Bernardino itself. BFS cites *Reeb v. Interchange Resources, Inc. of Phoenix*, 13 Ariz.App. 16, 473 P.2d 818, *vacated on other grounds*, 106 Ariz. 458, 478 P.2d 82 (1970), which holds that payment by the garnishee after service of the writ of garnishment to one of the judgment debtor's creditors is the equivalent of paying the judgment debtor himself and said payment is void. The *Reeb* case, however, did not involve a situation where the garnishee-defendant had reserved the right to pay third parties instead of paying the account creditor. AGN did reserve this right. AGN paid the laborers and materialmen not because they were creditors of Bernardino but to prevent them from being creditors of AGN by asserting their lien rights.

BFS emphasizes the fact that AGN made payment of $5,551.21 jointly to Bernardino and Fastway. The evidence before the trial court, however, was that the money was intended as payment to Fastway for the materials that it had supplied under the Bernardino contract. There is no contention that the money did not go solely to Fastway. Under these circumstances where AGN had reserved the right to pay the materialmen and laborers instead of paying Bernardino, the assignee BFS cannot require AGN to pay it rather than the materialmen and suppliers.

We reverse the trial court's ruling that AGN was liable to BFS for the $5,551.21 paid for materials supplied by Fastway and remand to the trial court for entry of summary judgment for AGN allowing it to setoff $7,020.19 for payments made both before and after notice of the assignment.[4]

### ATTORNEY'S FEES

AGN sought costs and attorney's fees in its cross-motion for summary judgment citing A.R.S. § 12–1591(C) and *Gulf Homes, Inc. v. DM Federal Credit Union*, 125 Ariz. 68, 607 P.2d 387 (App.1979). AGN has renewed this request on appeal for the attorney's fees it incurred in the trial court. A.R.S. § 12–1591(C) provides: "Where the answer [filed by a garnishee-defendant] is controverted, the costs shall abide the issue." In *Gulf Homes, Inc.,* Division 2 of this court has held that the term "costs" as used in A.R.S. § 12–1591(C) includes reasonable attorney's fees incurred by a garnishee who is successful in the litigation. BFS does not oppose the request for attorney's fees and costs other than to say that AGN is not entitled to costs and attorney's fees if it is not the successful party.

 We have reversed the trial court's granting of summary judgment for BFS to the extent of the setoffs claimed by AGN, and have held that AGN is entitled

to summary judgment in the amount of $7,020.19. Therefore, we find AGN to be the successful party in the litigation. We remand to the trial court for a determination of the amount of costs and attorney's fees to which AGN is entitled in the trial court.

As the successful party, AGN is entitled to costs and attorney fees on appeal. We adopt the rationale set forth in *Gulf Homes, supra,* and extend it to include costs and fees on appeal. Since the successful garnishee is entitled to these expenses in the trial court, the successful garnishee should receive costs and fees on appeal. AGN shall comply with Rule 21(a), Arizona Rules of Civil Appellate Procedure, in regard to this award.

Reversed and remanded.

EUBANK, P.J., and OGG, J., concur.

**4.** The discrepancy in figures that the parties are dealing with is explained as follows: BFS did not include the payments AGN made directly to third parties totaling $468.98 in its motion for summary judgment, nor did the trial court's

judgment include this figure. AGN in its cross motion for summary judgment did seek an affirmative ruling that it be allowed to claim this figure in its setoffs.