147 Ariz. 510 (1985)
711 P.2d 649
BUSINESS FINANCIAL SERVICES, INC., an Arizona corporation, Plaintiff-Appellee,
v.
BUTLER AND BOOTH DEVELOPMENT COMPANY, INC., an Arizona corporation, Garnishee Defendant-Appellant.
No. 1 CA-CIV 7268.
Court of Appeals of Arizona, Division 1, Department D.
November 12, 1985.
*511 Winston & Strawn by Richard W. Shapiro, Phoenix, for garnishee defendant-appellant.
Sacks, Tierney & Kasen, P.A. by Lawrence J. Rosenfeld, Phoenix, for plaintiff-appellee.
OPINION
GRANT, Judge.
This appeal arose out of a garnishment action filed by appellee Business Financial Services, Inc. (BFS) in which appellant Butler and Booth Development Company (Butler & Booth) was required to state its indebtedness to Bernardino and Maria Medina, dba Bernardino Concrete Construction Company (Bernardino). Butler & Booth filed an answer to the writ of garnishment stating it was not indebted to Bernardino. BFS then filed a tender of issue claiming that Butler & Booth was indebted to Bernardino in the amount of $16,538. Cross-motions for summary judgment were filed. The trial court granted the motion for summary judgment filed by BFS and directed that final judgment be entered in favor of BFS in the principal sum of $11,037.85 together with interest thereon at the rate of 10 percent per annum from July 15, 1981 until paid. Butler & Booth has appealed.
ISSUES
(1) Is Butler & Booth entitled to setoffs and defenses resulting from Bernardino's non-performance of the contract giving rise to the account receivable; (2) is Butler & Booth's obligation to pay the material supplier a defense that accrued before Butler & Booth received notification of the assignment; (3) is Butler & Booth entitled to an award of costs and attorney's fees pursuant to A.R.S. § 12-1591(C)?
FACTS
Butler & Booth entered into a subcontract with Bernardino on May 7, 1981. Bernardino agreed to provide all equipment, labor, materials and supervision to complete certain concrete work on a development known as Winnwood Village Phase II. Bernardino obtained materials necessary to complete the work from Fast-Way Redi-Mix, Inc. (Fast-Way). In connection with the Fast-Way subcontract, Bernardino, Fast-Way and Butler & Booth entered into a joint check agreement wherein Butler & Booth agreed to add Fast-Way as joint payee on any checks issued to Bernardino. On May 16, 1981 Butler & Booth issued a check in the amount of $2,500 as first payment on the Bernardino contract. A second payment of $250 was made on May 22, 1981.
On July 8, 1981, BFS notified Butler & Booth by letter of BFS's security interest *512 in Bernardino's accounts receivable. Bernardino and BFS had entered into an agreement wherein BFS leased certain equipment to Bernardino and, as security for Bernardino's performance of its obligations under the lease, Bernardino gave to BFS a security interest in Bernardino's accounts receivable.
Before Butler & Booth received notice of BFS's security interest, Fast-Way had furnished materials to the Winnwood Village Phase II project for Bernardino's work and had submitted a bill to Butler & Booth in the amount of $9,337.85. After receiving notice of BFS's security interest Butler & Booth issued a check for $9,337.85 as payment for the materials from Fast-Way. Thereafter, Butler & Booth issued a second check for $1,700 to Bernardino and Fast-Way.
In August, 1981, Butler & Booth were served with a writ of garnishment relating to the Bernardino-BFS contract. Butler & Booth answered that it was not indebted to Bernardino. BFS filed a tender of issue and the trial court entered judgment in the amount of $11,037.85, representing the amounts of checks issued by Butler & Booth subsequent to July 8, 1981.
I. IS THE RIGHT OF AN ASSIGNEE OF AN ACCOUNT RECEIVABLE TO RECEIVE PAYMENT FROM THE ACCOUNT DEBTOR SUBJECT TO SETOFFS AND DEFENSES RESULTING FROM THE ASSIGNOR'S NON-PERFORMANCE OF THE CONTRACT WITH THE ACCOUNT DEBTOR?
Butler & Booth claims it is entitled to setoffs and defenses resulting from Bernardino's non-performance of the contract giving rise to the account receivable. Butler & Booth relies on a provision of the Uniform Commercial Code contained in A.R.S. § 47-9318 [formerly § 44-3139(A)(1)], which provides:
A. Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in A.R.S. § 47-9206, the rights of an assignee are subject to: (1) All the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom....
Butler & Booth claims that the uncontroverted facts established that Bernardino failed to pay for materials supplied by Fast-Way for Bernardino's work at the Butler & Booth project in derogation of the Butler & Booth-Bernardino contract. This failure to perform forced Butler & Booth to pay Fast-Way $11,037.85, entitling Butler & Booth to a setoff in that amount against any amount due BFS under the assignment.
We agree with Butler & Booth that BFS, as an assignee, cannot stand in any better position than its assignor, Bernardino. Farmers Acceptance Corp. v. DeLozier, 178 Colo. 291, 496 P.2d 1016 (1972). This position is made clear by the Restatement (Second) of Contracts, § 336, comment b (1981):
[T]he assignment of a non-negotiable contractual right ordinarily transfers what the assignor has but only what he has. The assignee's right depends on the validity and enforceability of the contract creating the right, and is subject to limitations imposed by the terms of that contract and to defenses which would have been available against the obligee had there been no assignment.
See also Business Financial Services, Inc. v. AGN Development Corp., 143 Ariz. 603, 694 P.2d 1217 (App. 1984).
BFS claims that Butler & Booth cannot come under this theory because there was no failure to perform on the part of Bernardino. However, the contract between Butler & Booth and Bernardino provided: "Sub-contractor to supply all equipment, labor, materials and supervision to complete all concrete work as per plans and specifications." (Emphasis added.)
In view of the Arizona statutory provisions establishing materialmen's lien rights, (see A.R.S. § 33-981, et seq.) the contractual obligation of the subcontractor to "supply" materials must be construed as including an obligation on the subcontractor's part to pay for the materials so as to *513 preclude the establishment of lien rights against the property. Therefore it is clear from the record that the materials were not supplied by Bernardino as required by the subcontract; accordingly Bernardino was in breach of its contract with Butler & Booth. Notwithstanding the foregoing, BFS contends that its rights are somehow increased because of a contractual provision that all checks were to be made jointly to Bernardino and concrete suppliers (which would include Fast-Way). We see no validity in this argument. Bernardino's failure to pay for the materials gives rise to a right of offset under A.R.S. § 47-9318(A)(1) [formerly A.R.S. § 44-3139(A)(1)]. The joint check agreement between Butler & Booth and Bernardino relating to concrete suppliers does not alter the terms of the contract between Butler & Booth and Bernardino. Bernardino's only involvement with the joint check agreement was to request and authorize Butler & Booth to make payments in the form of a joint check. This did not change the underlying contract between Butler & Booth and Bernardino nor did it relieve Bernardino from its obligations under the contract to supply materials.
II. BUTLER & BOOTH'S OBLIGATION TO PAY THE MATERIALS SUPPLIER IS A DEFENSE THAT ACCRUED BEFORE BUTLER & BOOTH RECEIVED NOTIFICATION OF THE ASSIGNMENT.
Butler & Booth claims that another limitation on BFS's right to collect is contained in A.R.S. § 47-9318(A)(2) [formerly A.R.S. § 44-3139(A)(2)] which provides that generally the rights of an assignee are subject to "[a]ny other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment." The uncontroverted evidence in the record establishes that Fast-Way supplied material and submitted invoices for those materials in May, 1981 prior to the date of July 8, 1981 when Butler & Booth first received notification of BFS's security interest. Fast-Way's lien attached and began to accrue before this notification was given to Butler & Booth. The materialmen's lien created a legal obligation on the part of Butler & Booth to pay for the materials supplied to its project. A.R.S. § 33-981(B); A.R.S. § 33-992; James Weller, Inc. v. Hansen, 21 Ariz. App. 217, 517 P.2d 1110 (1973); Business Financial Services, v. AGN Development Corp.
We reverse the trial court's ruling that Butler & Booth was liable to BFS in the amount of $11,037.85 paid for materials supplied by Fast-Way and remand to the trial court for entry of summary judgment for Butler & Booth allowing it a setoff in the principal sum of $11,037.85.
III. ATTORNEY'S FEES.
Butler & Booth seeks costs and attorney's fees, citing A.R.S. § 12-1591(C) and Gulf Homes, Inc. v. D.M. Federal Credit Union, 125 Ariz. 68, 607 P.2d 387 (App. 1979). The request was made in its cross-motion for summary judgment and renewed in this appeal. A.R.S. § 12-1591(C) provided prior to its amendment effective August 3, 1984: "Where the answer [filed by a garnishee-defendant] is controverted, the costs abide the issue." In Gulf Homes, Inc., Division Two of this court held that the term "costs" as used in that statute includes reasonable attorney's fees incurred by a garnishee who is successful in the litigation. We have determined that Butler & Booth is entitled to summary judgment and is therefore the successful party in this litigation. We remand to the trial court for a determination of the amount of costs and attorney's fees to which Butler & Booth is entitled in the trial court.
As the successful party, Butler & Booth is entitled to costs and attorney's fees on appeal. Business Financial Services, Inc. v. AGN Development Corp. Butler & Booth shall comply with rule 21(a), Arizona Rules of Civil Appellate Procedure, in regard to this award. Reversed and remanded.
MEYERSON, P.J., and HAIRE, J., concur.