795 P.2d 210

**INDEPENDENT NATIONAL BANK, a national banking association, Plaintiff–Appellee,**

v.

**WESTMOOR ELECTRIC, INC., an Arizona corporation, Defendant–Appellant.**

**No. 1 CA–CIV 88–419.**

Court of Appeals of Arizona, Division 1, Department D.

May 3, 1990.

Rawlins, Burrus, Lewkowitz & Feinstein, P.C. by R. Stewart Halstead, Phoenix, for plaintiff-appellee.

Thaddeus G. Baker, Yuma, for defendant-appellant.

## OPINION

BROOKS, Judge.

Westmoor Electric, Inc. (Westmoor), an account debtor, appeals from the trial court's entry of summary judgment in favor of Independent National Bank (the bank), an assignee of the account. Westmoor made payments to the bank's assignor, Western Communications, Inc. (WCI), after it received notice of the assignment and directions to pay the bank. We must determine whether the trial court correctly found that Westmoor is liable to the bank for these payments.

We find that the bank's wrongful payment claim against Westmoor is subject to claims and defenses arising from Westmoor's contract with the bank's assignor, WCI, that Westmoor could have asserted against WCI. We further find that genuine issues of material fact exist as to whether Westmoor has valid claims and defenses against WCI that would result in its owing nothing to the bank despite its failure to comply with the payment directions. We therefore reverse the trial court's entry of summary judgment in the bank's favor and remand.

▮ We are mindful that summary judgment is only appropriate where the record demonstrates that there is no dispute as to any material fact, that only one inference can be drawn from the undisputed material facts, and that based upon those facts, the moving party is entitled to judgment as a matter of law. *Haralambie v. Pima County*, 137 Ariz. 207, 669 P.2d 984 (App.1983). In reviewing the trial court's grant of summary judgment for the bank, we must view the facts and all inferences that reasonably arise from them in the light most favorable to Westmoor, the nonmoving party. *Farmers Ins. Co. v. Vagnozzi*, 138 Ariz. 443, 675 P.2d 703 (1983).

## FACTS

Westmoor was the successful bidder on a subcontract for the complete installation of all electrical equipment at the Yuma County Sheriff's Office and Detention Center in Yuma, Arizona. Part of the subcontract required Westmoor to design and install seven separate electrical systems for the detention center. In November of 1984, Westmoor subcontracted this portion of its subcontract to WCI for a total price of $480,000. Within three months, Westmoor discovered that WCI was having financial difficulties. It received a notice which stated that the Internal Revenue Service had filed a tax lien against WCI. In addition, some of the manufacturers who were supplying WCI with the required electrical system equipment and material told Westmoor that WCI was not paying them. They therefore refused to deliver any more equipment or materials unless they were paid directly or by joint checks.

Westmoor realized that any failure of performance on WCI's part would probably subject Westmoor to the penalty provisions of its own subcontract with the prime contractor. It therefore met with WCI in May of 1985 and modified the contract to provide for the orderly payment of the material suppliers, the disposition of the Internal Revenue Service lien, and WCI's work on the job. The material modifications of the contract were as follows:

1. By the end of July, August and September, 1985 Westmoor Electric, Inc. would pay to Internal Revenue Service $10,000 each month and by the end of October, 1985 the balance of $9,642.77 to satisfy the Tax Lien filed against Westmoor Electric, Inc. for Western Communications, Inc. tax obligation.

2. Joint checks made to Western Communications, Inc. and its suppliers would be issued each month for materials and equipment furnished to the project, less a 10 percent retainage.

3. $3,500.00 each month would be issued to Western Communications, Inc.

4. Within 30 days after completion and final acceptance of the project Westmoor Electric, Inc. would issue a check to Western Communications, Inc., less all previously paid amounts to the Internal Revenue Service, the joint checks as stated above and to Western Communications, Inc.

According to Westmoor's president, the $3,500 monthly payment to WCI represented the amount necessary to keep WCI's office running so that it could remain on the project.

Despite the new arrangements, WCI's failure to comply with its agreement with Westmoor continued. WCI cashed checks that Westmoor made out to it and to certain suppliers jointly, without paying the suppliers the amounts that they were owed. It also failed to pay other suppliers. Westmoor tried to keep the work going by modifying the agreement again. The February 12, 1986, modification provided, among other things, that Westmoor would make payments directly to WCI's employees and suppliers. WCI eventually walked off the job and refused to perform. On May 5, 1986, Westmoor formally terminated WCI's work on the project. Westmoor finished the work itself at a cost that exceeded the original contract price by $93,060.58.

While some of these events were taking place, WCI borrowed $10,778.04 from the bank. It executed a promissory note for that amount on August 2, 1985. The note was secured by an agreement that granted the bank a security interest in WCI's inventory, equipment, accounts and other rights to payment, and general intangibles. WCI's president, James H. Clark, also executed a guarantee of WCI's obligations. WCI defaulted in the payment of its indebtedness to the bank, leaving the principal balance of $10,778.04 owing.

On November 5, 1985, after WCI defaulted on the note, the bank notified Westmoor by letter that WCI had specifically assigned its right to payments from the Yuma County jail project to the bank and that it had also provided the bank with a general assignment of its rights pursuant to the security agreement. The letter directed Westmoor to make all future payments stemming from its obligations to WCI directly to the bank. On December 5, 1985, WCI's president also notified Westmoor by letter that until further notice, Westmoor was to make all future payments directly to the bank.

Despite receiving these notices, Westmoor continued to pay WCI for the work done on the construction project. Payments that Westmoor made directly to WCI between November 20, 1985, and April 24, 1986, totalled $22,557.80. Payments that Westmoor made jointly to WCI and various suppliers during November and December of 1985 totalled $32,894.31. Westmoor made no payments to the bank and refused the bank's subsequent demands for payment.

On March 28, 1986, the bank filed suit against WCI, Clark, and Westmoor. It charged WCI and Clark with default under the promissory note and guarantee agreement. It charged Westmoor with making wrongful payment to WCI after receiving notice of the bank's assignment of WCI's rights to payment. The trial court granted the bank's motion for summary judgment against Westmoor. It entered judgment in the amount of $10,778 plus interest, costs, and attorney's fees in the bank's favor. Westmoor appeals from this judgment.

## DISCUSSION

Westmoor does not deny that it was an "account debtor" as that term is used both in case law and in Arizona's version of the Uniform Commercial Code. *See* A.R.S. § 47–1101 *et seq.*[1] It also does not deny that it received notification that WCI had assigned its rights to receive payments under the construction contract to the bank. Finally, it does not deny that both the bank and WCI's president directed it to make all

1. A.R.S. section 47–9105(A)(1) defines an "account debtor" as a person "who is obligated on an account, chattel paper or general intangible."

future payments stemming from its obligations to WCI directly to the bank.

It is well settled that when an account debtor receives notice of a valid assignment and directions to pay to the assignee, the account debtor becomes liable to pay the assignee. *Valley Nat'l Bank v. Flagstaff Dairy,* 116 Ariz. 513, 570 P.2d 200 (App.1977); *Bank of Yuma v. Arrow Constr. Co.,* 106 Ariz. 582, 480 P.2d 338 (1971); *Greene v. Reed,* 15 Ariz.App. 110, 486 P.2d 222 (1971). Generally, an account debtor who disregards directions to pay the assignee and instead pays the assignor remains liable to the assignee. *Van Waters and Rogers, Inc. v. Interchange Resources, Inc.,* 14 Ariz.App. 414, 484 P.2d 26 (1971). The bank argues that since Westmoor made $22,557.80 in payments to WCI after it received notice of the assignment and directions to pay the bank, the trial court correctly granted summary judgment to the bank against Westmoor for WCI's $10,778 debt to the bank.

In response, Westmoor argues that the aforementioned principles of law are not applicable to the extent that the account debtor has defenses or claims that arise from the preexisting contract between it and the assignor. Westmoor urges us to find that summary judgment was improper in this case because the record demonstrates that material issues of fact exist as to whether it had any claims or defenses under the construction contract that would absolve it from liability to the bank.

Westmoor is correct in arguing that as an account debtor, it is entitled to assert against the assignee any claims and defenses arising out of its contract with the assignor that it would have been able to assert against the assignor itself. This principle is well established both by statute and by case law. *See* A.R.S. § 47–9318(A). As we stated in *Business Financial Services v. Butler and Booth Development Co.,* 147 Ariz. 510, 512, 711 P.2d 649, 651 (App.1985):

> [A]n assignee, cannot stand in any better position than its assignor, ... *Farmers Acceptance Corp. v. DeLozier,* 178 Colo. 291, 496 P.2d 1016 (1972). This position

is made clear by the *Restatement (Second) of Contracts,* § 336, comment b (1981):

> [T]he assignment of a non-negotiable contractual right ordinarily transfers what the assignor has but only what he has. The assignee's right depends on the validity and enforceability of the contract creating the right, and is subject to limitations imposed by the terms of that contract and to defenses which would have been available against the obligee had there been no assignment.

In *Butler,* we concluded that an assignee was not entitled to money that he claimed was owed to him under a construction contract because a defense to the contract existed in that the assignor had failed to perform and therefore would not itself have been entitled to payment from the account debtor.

Similarly, in *Business Financial Services v. AGN Development Corp.,* 143 Ariz. 603, 607, 694 P.2d 1217, 1221 (App.1984), we quoted from the Superior Court of New Mexico, which made the following statement in *Associates Loan Co. v. Walker,* 76 N.M. 520, 523, 416 P.2d 529, 531 (1966):

> The fundamental rule of law, unchanged by the quoted section of the Uniform Commercial Code, is that an assignee of a chose in action acquires by virtue of his assignment nothing more than the assignor had and all equities and defenses which could have been raised by the debtor against the assignor are available to the debtor against the assignee.

In the *AGN Development* case, we found that an account debtor was not liable to the assignee for payments that it made in the form of joint checks to the assignor and to third parties who had supplied labor and materials under a construction subcontract. In making our finding, we noted that the account debtor had reserved the right in its contract with the assignor to pay materialmen and laborers directly and to deduct such payments from the amount that it owed the assignor. We concluded that the assignee's claim for payment was subject

to the defense created by the account debtor's reservation of rights in its preexisting contract with the assignor.

In the case now before us, the bank has not claimed that the $32,894.31 in checks made out jointly to WCI and its various suppliers was improperly paid. The bank presumably recognizes that as WCI's assignee, its right to receive payments under the construction contract was subject to the modification that the contracting parties made before the assignment took place. This modification provided that Westmoor could issue joint checks to pay WCI's suppliers. The bank only complains of the $22,557.80 that Westmoor paid to WCI *alone*.

In urging us to affirm the judgment entered in its favor, the bank appears to take the position that the rule which provides that an assignee's rights are subject to the claims and defenses arising under the contract applies only where the account debtor has not yet made the payments or has made payments only to persons other than the assignor. It contends that the rule has no application when the assignee has made payments directly to the assignor after receiving notice of the assignment and directions to pay the assignee. The bank cites the following passage in support of its argument:

> After notice to the owner of an assignment of the proceeds, he is not warranted in making payments directly to the contractor. If he does so, such payments are at his peril, and the assignee may recover the amount of his assignment even though there is not a sufficient sum remaining in the owner's hands out of the contract price to meet the assignment.

13 Am.Jur.2d *Building and Construction Contracts* § 92, at 91–92 (1964).

■ We do not agree with the bank's assertion that an account debtor who pays the assignor after being instructed to pay the assignee is precluded from raising defenses and claims arising from his contract with the assignor in an action for wrongful payment filed by the assignee. The bank has cited nothing that so holds. The American Jurisprudence passage that it relies upon only states that if the account debtor makes payments to the assignor after receiving notice of the assignment, he makes those payments "at his peril." In other words, he will be liable to the assignee for the payments in the absence of claims or defenses that he could have asserted against the assignor. In addition, a number of Arizona cases have recognized the account debtor's right to raise defenses in wrongful payment actions. *See Valley Nat'l Bank v. Flagstaff Dairy*, 116 Ariz. 513, 570 P.2d 200 (App.1977); *Van Waters and Rogers, Inc. v. Interchange Resources, Inc.*, 14 Ariz.App. 414, 484 P.2d 26 (1971); *United Bank v. Romanoski Glass and Mirror*, 14 Ariz.App. 90, 480 P.2d 1007 (1971). We therefore conclude that the issue for determination in this case is whether Westmoor presented evidence of a possible claim or defense arising under the construction contract that would prevent it from being liable to the bank for the payments that it made to WCI after it received notice of the assignment and directions to pay the bank.

■ Some of Westmoor's contentions regarding its possible claims or defenses have no merit and are disposed of easily. For example, Westmoor seems to argue that it was entitled to make payments directly to WCI if WCI used the money solely for overhead and labor. It maintains that WCI agreed to do so. An issue of fact may exist as to whether WCI used the money in this way. However, we do not agree that WCI's use of the money in accordance with this agreement could give rise to a defense that would absolve Westmoor from liability for paying WCI after being directed to pay the bank. It is irrelevant how WCI planned to use the money; it only matters that Westmoor made payments to WCI knowing that WCI had assigned its rights to all payments due it under the contract to the bank.

■ Westmoor also seems to suggest that WCI was already in default before the assignment took place and that, as a result, it was not indebted to WCI under the contract for the sums that it paid to it follow-

ing the assignment. The gist of this argument is that if WCI was not entitled to the funds, then the bank as WCI's assignee was not entitled to them either. However, while WCI may have been in breach at one time, we note that Westmoor and WCI modified their agreement to allow performance to continue. Generally, when a party to a contract permits the breaching party to perform, he waives the breach. *Frei v. Hamilton*, 123 Ariz. 544, 601 P.2d 307 (App.1979).

■ Westmoor primarily relies on the fact that WCI eventually walked off the job, leaving Westmoor to complete it at a cost overrun of $93,060.58. Westmoor contends that it would have had a set-off right for this amount against WCI for its failure to complete the work. We agree that Westmoor has presented a fact issue as to whether it would have been entitled to a set-off under its contract with WCI for WCI's failure to finish its performance. We also agree that the question of Westmoor's liability for the payments that it made to WCI after being directed to pay the bank must abide trial of this fact issue. Depending on the amount of the set-off that Westmoor may establish, it may not have owed WCI the sum that it paid WCI after being directed to pay the bank. Westmoor cannot be liable for making payments to WCI that it did not actually owe under the contract.

■ WCI's breach that gave rise to the possible set-off against it under the contract did not occur until after Westmoor had notice of the assignment. However, that does not prevent Westmoor from asserting this claim or defense. Arizona Revised Statute section 47–9318(A) provides:

A. Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in section § 47–9206 the rights of an assignee are subject to:

(1) All the terms of the contract between the account debtor and the assignor and any defense or claim arising therefrom; and

(2) Any other defense or claim of the account debtor against the assignor

which accrues before the account debtor receives notification of the assignment.

Comment 1 to section 9–318 of the Uniform Commercial Code, from which A.R.S. section 47–9318(A)(1) and (2) are taken, points out the distinction between these two subsections of the statute. Claims and defenses arising independently of the contract may be asserted by the account debtor only if they arise *before* notice of assignment. However, claims or defenses arising out of the contract may be asserted by the account debtor whether the breach giving rise to such claims or defenses arises *before or after* notification of assignment.

■ In oral argument in this court, counsel for the bank noted that Westmoor did not cite section 47–9318(A)(1) in the trial court. However, Westmoor did argue in the trial court that the bank was subject to claims and defenses that arose from the contract between Westmoor and WCI. In support of this argument, Westmoor cited *Business Financial Services v. Butler and Booth Development Co.*, 147 Ariz. 510, 711 P.2d 649 (App.1985) and *Business Financial Services v. AGN Development Corp.*, 143 Ariz. 603, 694 P.2d 1217 (App. 1984), both of which discuss section 47–9318(A)(1). We believe that this sufficiently preserved Westmoor's argument for appeal.

■ The bank has not addressed the question of whether Westmoor's set-off claim is a "claim" within the meaning of A.R.S. section 47–9318(A). From our research, we find that courts have consistently treated a set-off as such a "claim". *See, e.g., Butler*, 147 Ariz. at 512–13, 711 P.2d at 651–52; *Farmers Acceptance Corp. v. DeLozier*, 178 Colo. 291, 496 P.2d 1016 (1972); *Seattle–First Nat'l Bank v. Oregon Pac. Indus., Inc.*, 262 Or. 578, 500 P.2d 1033 (1972). Where the claimed set-off arises from the contract that was entered into by the account debtor and the assignor, the account debtor is entitled to assert the set-off even though the breach giving rise to the set-off claim occurred after notice of assignment was given. *See Ertel v. Radio Corp. of America*, 261 Ind. 573, 307 N.E.2d 471 (1974); *James Talcott, Inc. v.*

**574**

*H. Corenzwit and Co.,* 76 N.J. 305, 387 A.2d 350 (1978).

## CONCLUSION

We are satisfied that Westmoor is entitled to trial on the issue of whether WCI's contractual liability to Westmoor was such that Westmoor did not actually owe WCI the payments that it made to it after receiving notice of the assignment. For this reason, we reverse the trial court's judgment and remand for further proceedings consistent with this decision.

## ATTORNEY'S FEES ON APPEAL

Westmoor requests its attorney's fees on appeal pursuant to A.R.S. § 12–341.01(A). We deny this request without prejudice to the right of the trial court, in its discretion, to award Westmoor attorney's fees for this appeal should Westmoor ultimately prevail on the merits.

Reversed and remanded.

CLABORNE, P.J., and MEYERSON, J., retired, concur.

NOTE: The Honorable Bruce E. Meyerson, retired, was authorized to participate in this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 20, and A.R.S. § 38–813.