_____

No. 96-2192
_____

The Boatmen's National Bank of      *
St. Louis, a National Banking       *
Association,                        *
                                    *
                                    *   Appeal from the United States
       Plaintiff/Appellant,         *   District Court for the  Eastern
                                    *   District of Missouri.
          v.                        *
                                    *
Sears, Roebuck and Company,         *
                                    *
       Defendant/Appellee.          *

_____

Submitted: December 13, 1996

Filed: February 5, 1997
_____

Before WOLLMAN and MURPHY, Circuit Judges, and TUNHEIM,[1] District Judge.
_____

MURPHY, Circuit Judge.

In exchange for a $5,000,000 revolving line of credit, Boatmen's National Bank of St. Louis (Boatmen's) took a security interest in the accounts receivable of Boardman's Printing Company (BPC). BPC defaulted on its loan and Boatmen's took assignment of BPC's accounts receivable. At the time of default, Sears, Roebuck and Company (Sears) owed BPC $909,641.52 for the printing of advertising circulars. When Boatmen's attempted to

_____

    The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

collect the money Sears owed BPC, Sears refused to pay the full amount, claiming the right to an offset of what it had paid to BPC's paper suppliers.  The district court entered judgment in favor of Boatmen's, but in an amount reflecting the offset sought by Sears.  Boatmen's appeals, and we reverse.

The parties' positions are based on several contractual arrangements.  BPC printed advertising circulars for Sears according to the terms of a Retail Printing Agreement between BPC and Sears.  Under this arrangement, BPC was authorized to purchase paper only from Sears-designated paper suppliers.  BPC would then charge Sears for both the paper and the printing services.  At the same time, Sears had separate agreements, both written and oral, with the paper suppliers.  In exchange for designating the paper suppliers as the source of paper for its orders, the suppliers would issue Sears a partial rebate of the paper price.  In order to obtain these discounted paper supply arrangements, Sears agreed with the paper suppliers to be liable to them if BPC failed to pay them.  BPC was not a party to the agreements between Sears and the paper suppliers.

In 1991 BPC and Boatmen's entered into a loan agreement.  In exchange for extending credit, Boatmen's received and perfected a security interest in BPC's accounts receivable.  Neither the security agreement nor the loan agreement gave notice that the accounts of BPC might be encumbered by the side agreements between Sears and the paper suppliers.  After BPC's default on the loan, Boatmen's took assignment of BPC's accounts receivable.  Boatmen's therefore now "stands in the shoes" of BPC for the purposes of the contract between Sears and BPC. See, e.g., Doss v. Epic Healthcare Mgmt. Co., 901 S.W.2d 216, 222 (Mo. Ct. App. 1995).

The parties differ over the existence of Sears' right to offset the money it paid the paper suppliers against the money it

2

owed BPC. Boatmen's argues that Sears does not have a right to offset and that its security interest entitles it to the full amount Sears owes BPC's accounts. Sears counters that the language of its agreement with BPC provides an express right to offset. In the alternative, Sears argues that it possesses a common law right to offset since it assumed BPC's obligations to the paper suppliers.

Boatmen's filed suit in federal court and both parties moved for summary judgment. The district court held that Sears had properly offset the amount it paid the paper suppliers from the amount it owed BPC, but that Sears still owed Boatmen's the amount in excess of the offset. The district court determined that Sears originally owed BPC $909,641.52. After applying the offset payments, it found Sears was still indebted in the amount of $139,320.97 and ordered judgment entered for Boatmen's in that amount. Our standard of review is de novo. <u>Doe v. Wright</u>, 82 F.3d 265, 268 (8th Cir. 1996).

Both parties agree that § 9-318 of the Uniform Commercial Code (UCC), as codified in the Revised Missouri Statutory Code, controls our analysis. Section 9-318 provides that an assignee of accounts receivable (Boatmen's) has all the rights of the assignor (BPC), subject to offsets, claims and defenses of an account debtor (Sears). Specifically, § 9-318 states:

> (1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in section 400.9-206 the rights of an assignee are subject to
>
>> (a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and
>>
>> (b) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.

3

Mo. Rev. Stat. § 400.9-318.

Boatmen's contends on appeal that neither subsection (a) nor (b) provide Sears a right of offset to the amount it owed BPC. Subsection (a) does not apply it says because Sears is asserting rights arising from third party agreements, rather than the terms of its contract with BPC. Subsection (b) does not apply because Sears' claim against BPC for payments to the paper suppliers, which it made after it had received notification of the assignment of BPC's assets to Boatmen's, did not accrue before such notice.

Sears, on the other hand, argues that its payments to the suppliers were permissible offsets under (a) because they were made pursuant to its contract with BPC. In addition, Sears argues that it could offset the payments under (b) because it had a claim against BPC for anticipatory breach of contract prior to receiving notice of the assignment of BPC's accounts to Boatmen's.

Each party argues that paragraph 19 of the Sears agreement with BPC supports its position regarding subsection (a). Paragraph 19 reads:

> Under no circumstance will Contractor [BPC] make any purchases or incur any obligation or expense of any kind in the name of Sears. Contractor [BPC] shall promptly pay all the obligations of Contractor [BPC] including those for labor and material and will protect, defend and hold Sears free and harmless from any and all claims and liabilities incurred by Contractor [BPC] in the conduct and operation of Contractor's [BPC's] business. Contractor [BPC] will allow no lien to attach to Sears [sic] property for failure to pay any such amounts.

Sears believes that BPC's promise in this paragraph to hold Sears

free and harmless from all liabilities means that this contract obligated BPC to indemnify Sears for the claims of the paper suppliers. Boatmen's argues that Sears' obligation to the paper suppliers did not arise from paragraph 19, but out of separate agreements with those companies. Since Sears' payments to the suppliers were not made pursuant to "the terms of the contract" between Sears and BPC, Boatmen's contends § 9-318(1)(a) does not apply and does not provide support for the offset.

Paragraph 19 does not support Sears' claim to an express right to offset. The language is not broad enough to put BPC on notice that Sears would offset any payments it made to the paper suppliers. In contrast, Boatmen's points to a similar case where the disputed contract included a clause with an express right of offset:

> [account debtor] reserves the right to make any payments directly to materialman, subcontractors or laborers, and deduct said amounts from the balance owing to [the assignor].

Business Fin. Servs., Inc. v. AGN Dev. Corp., 694 P.2d 1217, 1221 (Ariz. 1985). Sears drafted the contract with BPC and had opportunity to negotiate for an express offset clause. Boatmen's argues that the failure of Sears to protect itself with such a clause should not be rectified by implying a right to offset from the language of paragraph 19.

Sears' payments to the suppliers were not made pursuant to the terms of the contract between Sears and BPC. Paragraph 19 does not impose any liability on Sears to BPC's paper suppliers, nor does it give any notice to BPC or its secured creditor, Boatmen's, of any separate contracts Sears had with third parties such as the paper suppliers. Since Sears does not point to any other section of the contract giving it the right to offset its payments to the paper suppliers, its claim to offset is not based

5

on its contract with BPC and § 9-318(1)(a) does not apply.

Sears also argues that it has a common law right of offset which constitutes a defense arising from its contract with BPC and fits within § 9-318(1)(a).  It cites in support Citizens Bank of Maryland v. Strumpf, 116 S. Ct. 286 (1995), a case allowing a creditor to withhold a payment owed a debtor who had filed bankruptcy.  In Strumpf, the Supreme Court noted that "[t]he right of set off (also called off set) allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A."  Id. at 289 (citation omitted)(internal quotations omitted).  In general, "to warrant a off set, the demands [of the parties] must be mutual and subsisting between the same parties and must be due in the same capacity or right."  Mercantile Trust Co. v. Mosby, 623 S.W.2d 22, 24 (Mo. Ct. App. 1981) (citation omitted) (internal quotation omitted).

Sears does not have a common law right to setoff because there is no mutuality of obligation and the parties are not the same.  Sears argues that its separately contracted debt to the paper suppliers excuses its debt to Boatmen's, as assignee of BPC's accounts.  This is different from the situation in Strumpf where A owed B and B owed A.  Here, A (Sears) claims its independent contractual payment to B (the paper suppliers) excuses its obligation to C (Boatmen's).  Strumpf is different from this case and Sears cannot rely on a common law right to offset as a claim under § 9-318(1)(a) to defeat the rights of Boatmen's.

Finally, Sears' claim to offset under § 9-318(1)(a) would not further the policy and goals of Article 9 of the UCC.  There was no notice in the contract between BPC and Sears of other agreements.  Any obligation of Sears to the paper suppliers is based on the separate agreements Sears had with them.  These side

agreements, to which BPC was not a party and about which Boatmen's would have had no notice, should not be allowed to defeat the perfected security interest held by Boatmen's in BPC's accounts receivable. A fundamental purpose of Article 9 is "to create commercial certainty and predictability by allowing [creditors] to rely on the specific perfection and priority rules that govern collateral within the scope of Article 9." Carlson v. Tandy Computer Leasing, 803 F.2d 391, 394 (8th Cir. 1986). This goal would be undermined by allowing undisclosed side agreements, such as the agreements between Sears and the paper suppliers, to defeat an otherwise valid security interest.

Under § 9-318(1)(b), Boatmen's rights would be subject to any non-contractual defense or claim Sears had against BPC, provided that the claim or defense accrued before Sears received notice of the assignment of BPC's accounts to Boatmen's. Boatmen's argues that any claim Sears may have had to an offset under § 9-318(1)(b) could not have accrued until after February 15, 1994, the date that Sears made the payments to the paper suppliers. Since Sears had notice of the assignment of BPC's assets to Boatmen's before February 15, 1994, § 9-318(1)(b) is inapplicable.

Sears counters that when BPC defaulted on its loan from Boatmen's on January 8, 1994, Sears had a claim for anticipatory breach of contract against BPC. Sears reasons that BPC's default on the loan meant that BPC would default on its obligations to the paper suppliers, and under paragraph 19 of its contract with Sears, BPC was obligated to pay its suppliers promptly. This breach of the contract between Sears and BPC would make Sears responsible for paying the paper suppliers, and Sears would therefore be justified in offsetting its debt to BPC.

It is not clear that Sears' anticipatory breach of contract theory is properly raised under § 9-318(1)(b). Section 9

7

318(1)(a) subjects the assignee to "all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom. . . ."  Section 9-318(1)(b) applies to "any other defense or claim. . . ."  Subsection (b), therefore, appears to cover only non-contractual claims of the account debtor.  See Mo. Rev. Stat. § 400.9-318 cmt. 1. (1994).  Sears' claim for an anticipatory breach of contract is necessarily a claim based on its contract with BPC, and as such, should not be raised under subsection (b).[2]

Sears' anticipatory breach of contract theory also requires reading the side agreements into the terms of the contract between BPC and Sears.  In order to justify its offset, Sears argues it was required by BPC's potential breach to pay the paper suppliers.  But, as discussed above, any liability of Sears to the paper suppliers is based on its side agreements, not the contract between BPC and Sears.  Since its liability arises from the side agreements, Sears cannot argue its offset is justified by BPC's potential breach of the contract with Sears.

We conclude that Boatmen's rights are not limited by either the terms of the contract between Sears and BPC, or by any claim Sears had before it received notice of the assignment of BPC's accounts to Boatmen's.  We therefore need not reach points raised by Boatmen's regarding the calculation of the offsets, Sears' oral guarantee to one paper supplier, or other factual questions about the paper purchases.

Accordingly, we reverse and remand for entry of judgment in

---

[2]Even if the argument is considered under subsection (b), it appears that Sears' claim for anticipatory breach of contract accrued at the same time it received notice of the assignment of BPC's accounts to Boatmen's.  In that case, Sears' anticipatory breach of contract claim would fail under subsection (b) because it would not have accrued before notice of the assignment.

8

favor of Boatmen's for the total amount of Sears' debt to BPC.


A true copy.

    Attest:


        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT