**SECURITY PACIFIC BANK, N.A., Appellant,**

v.

**HAINES TERMINAL AND HIGHWAY COMPANY, INC., an Alaska Corporation d/b/a White Pass Alaska, Appellee.**

No. S–5340.

Supreme Court of Alaska.

March 4, 1994.

Rehearing Denied March 31, 1994.

Gregory W. Lessmeier, Hughes, Thorsness, Gantz, Powell & Brundin, Juneau, for appellant.

William G. Ruddy, Ruddy, Bradley & Kolkhorst, Juneau, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, and COMPTON, JJ.

*OPINION*

MOORE, Chief Justice.

*INTRODUCTION*

In this commercial transaction dispute, Security Pacific Bank, a secured creditor of Chilkoot Lumber Company, appeals an order issued by the superior court allowing Haines Terminal and Highway Company, an unsecured creditor of Chilkoot Lumber, to recover approximately $23,000 from a bond posted by Security Pacific. The superior court based this decision on its finding that Security Pacific had improperly allowed Weyerhaeuser Corporation to receive part of the proceeds from the sale of collateral as an offset to prior debts owed by Chilkoot Lumber to Weyerhaeuser. We reverse.

*FACTS AND PROCEEDINGS*

Haines Terminal sold fuel on account to Chilkoot Lumber. Chilkoot Lumber's debt to Haines Terminal was unsecured. After Chilkoot Lumber's account became overdue, Haines Terminal filed a complaint against Chilkoot Lumber and Laurence Beck, the company's general manager, seeking $139,-162.26, the overdue amount.[1] On June 13,

---

1. Neither Beck nor Chilkoot Lumber are parties to this appeal. Beck appealed separately; the

1991, Haines Terminal moved for prejudgment attachment. It sought to attach a load of lumber which was to be loaded and shipped from Haines on June 16–17. Chilkoot Lumber opposed the motion, arguing that the lumber was subject to a number of pre-existing security interests.

The court signed the writ of attachment on June 15, 1991. Two days later, Security Pacific Bank moved to intervene. Security Pacific filed a motion to release the lumber, arguing that it possessed a superior security interest in the property. Security Pacific's secured status was evidenced by UCC–1 financing statements filed in July 1988 and January 1991.[2] Security Pacific and its predecessor had filed these statements to secure two promissory notes with balances due of $6,667,000 and $3,772,011.90. At the time of the attachment, Chilkoot Lumber's total inventory and accounts receivable, including the shipment of lumber at issue, were valued at approximately $3,782,000.

At a hearing before the superior court, Security Pacific argued that Haines could only attach property which was subject to execution, and that the lumber was not subject to execution due to Security Pacific's superior interest. Security Pacific noted that the debt owed by Chilkoot Lumber to Security Pacific far exceeded the value of lumber attached by Haines Terminal and the other inventory and receivables of Chilkoot Lumber. Haines Terminal responded by arguing that Chilkoot Lumber had an attachable interest in the lumber under AS 45.09.311 notwithstanding Security Pacific's superior position.[3]

Because the superior court was not prepared to render a decision immediately, Security Pacific offered to post a bond in the amount of $140,000 pursuant to Alaska Civil Rule 89(j) to obtain an immediate release of the writ of attachment. Upon the agreement of the parties, the court accepted the bond and quashed the writ. The court ordered an additional hearing to determine what should be done with the posted money.

After further briefing, the court issued an Order on Motion to Release Property in July 1991. The court found that Security Pacific was a secured creditor and had established that Chilkoot Lumber's debt exceeded the value of the collateral. The court "interpret[ed] AS 45.09.311 to mean that attachment may issue against any property held by a debtor in which the debtor has any interest above and beyond that of a secured party." Based upon this interpretation, the court concluded

> that [Haines Terminal] may not attach property that is subject to [Security Pacific's] security interest when that security interest is larger than any of [Chilkoot Lumber's] interests.... To the extent that the representations of counsel to the court are shown to be in fact what has happened to the funds in this case, then the $140,000 bond posted by [Security Pacific] shall be released to [Security Pacific]. That is, when [Security Pacific] or [Chilkoot Lumber] shows by affidavit that the proceeds of the sale of this lumber all went to [Security Pacific], then the bond shall be released.

The court also stated that "[n]either the intervenor nor the court ... intended [the posting of the bond] to do anything other than to protect [Haines Terminal's] rights, to the extent that they had any rights, in [Chilkoot Lumber's] interest in the lumber...." The court thus concluded that "[i]f it is shown that the debtor in fact did not have any such interest in the property, then plaintiff suffered no injury."

court's decision concerning his appeal is found in *Beck v. Haines Terminal & Highway Co.*, 843 P.2d 1229 (Alaska 1992).

2. The UCC–1 financing statements covered "[a]ll of [Chilkoot Lumber's] inventory, all accounts, chattel paper, documents and general intangibles, whether now owned or hereafter acquired, and wherever located, and all proceeds of the foregoing." Proceeds and products of collateral were also covered.

3. AS 45.09.311 reads:

**Alienability of debtor's rights; judicial process.** The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment, or other judicial process) notwithstanding a provision in the security agreement prohibiting a transfer or making the transfer a default.

Further discovery and briefing revealed that Weyerhaeuser Corporation sold the lumber for $995,583.72. Weyerhaeuser paid for the lumber by depositing $968,375.42 with Security Pacific to reduce the indebtedness of Chilkoot Lumber. Chilkoot Lumber never had access to these proceeds.

Weyerhaeuser, with the consent of Security Pacific, retained $27,208.30 from the sale. This amount consisted of $4000 which Weyerhaeuser had advanced to Chilkoot Lumber to pay laborers to load the ship; $23,450 as an offset to correct an overpayment made to Chilkoot Lumber on a previous shipment; and a credit of approximately $200 to Chilkoot Lumber for a prior invoice. The $23,450 overpayment on a prior transaction had been deposited with Security Pacific to Chilkoot Lumber's account.

At oral argument in July 1992, the superior court concluded that Security Pacific did not have the right

> to allow its agents to protect itself with respect to the [funds] that ... Chilkoot owed Weyerhaeuser from other transactions. And while I don't think that at that time [Haines Terminal] had any priority, there is no indication that Weyerhaeuser had any priority.... And [Haines Terminal] had taken the steps to protect its interest and has now obtained a judgment. And I think that to the extent that it was going to go to any unsecured creditor, it goes to [Haines Terminal].

Therefore, the court granted Haines Terminal $30,450 from Security Pacific's bond.[4] Security Pacific now appeals this decision.

*DISCUSSION*

■ The issue before this court is whether the trial court erred in awarding Haines Terminal the $23,450 withheld by Weyerhaeuser from the sales proceeds remitted to Security Pacific. The underlying facts are not in dispute. This is a question of law, subject to de novo review. *Klosterman v. Hickel Inv. Co.*, 821 P.2d 118, 122 (Alaska

1991) (review of question of law is de novo); *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1223 (Alaska 1992) ("'we may review the application of ... legal doctrine to undisputed facts without the usual deference to the superior court'") (quoting *Foss Alaska Line, Inc. v. Northland Servs.*, 724 P.2d 523, 526 (Alaska 1986)).

■ We conclude that the trial court's order granting Haines Terminal $23,450 from the bond posted by Security Pacific was in error. Security Pacific's perfected security interest in Chilkoot Lumber's inventory and any proceeds from the sale thereof was clearly entitled to priority over Haines Terminal's right as an unsecured creditor to subsequently attach the lumber. *See, e.g., State, Dep't of Natural Resources, Div. of Wildlife v. Benjamin*, 41 Colo.App. 520, 587 P.2d 1207, 1209 (1978); *Shaw Mudge & Co. v. Sher-Mart Mfg. Co.*, 334 A.2d 357, 359 (N.J.App. 1975).

In its July 1991 Order on Motion to Release Property, the trial court properly held that Haines Terminal could not "attach property that is subject to a security interest when that security interest is larger than any of the debtor's interests." In this case, Security Pacific was substantially under-collateralized. The debt to Security Pacific secured by the inventory and receivables of Chilkoot Lumber was in excess of ten million dollars. The collateral, including the attached shipment of lumber, was valued at less than four million dollars. Chilkoot Lumber had no equity in the lumber which Haines Terminal could hope to reach by attachment or execution.

■ As the trial court noted, the bond posted by Security Pacific was intended "to protect [Haines Terminal's] rights, to the extent that they had any rights, in [Chilkoot Lumber's] interest in the lumber.... If it is shown that the debtor in fact did not have any such interest in the property, then [Haines Terminal] suffered no injury." Under the facts of this case, Chilkoot Lumber

---

4. The parties agree that the superior court erred in granting Haines Terminal $7000 for demurrage expenses incurred by Weyerhaeuser. Haines Terminal delivered a check for that amount to Security Pacific contemporaneously

with the filing of its brief, rendering the issue moot. The amount in dispute here is the $23,450 offset for prior transactions between Chilkoot Lumber, Security Pacific, and Weyerhaeuser.

had no equity in the collateral. Therefore, we conclude that Haines Terminal has suffered no injury as a result of Weyerhaeuser's offset.

We are also satisfied that Haines Terminal's right to the $23,450 retained by Weyerhaeuser was subordinate to Weyerhaeuser's right of setoff. Alaska Statute 45.-09.318(a) (Alaska's version of § 9–318 of the Uniform Commercial Code) provides:

> (a) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in AS 45.09.206, the rights of an assignee are subject to
>
> (1) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom....

Under this provision, the rights of Security Pacific (the assignee of Chilkoot Lumber's right to payment for the lumber) were subject to whatever contractual claims and defenses Weyerhaeuser (the account debtor) would have been able to assert against Chilkoot Lumber (the assignor). Thus, Weyerhaeuser was entitled to offset its $23,450 overpayment on a prior lumber shipment from Chilkoot Lumber and Security Pacific. Under the facts of this case, its claim to those funds was superior to that of Security Pacific and, *a fortiori*, to the unsecured claim of Haines Terminal.[5]

This case involves facts strikingly similar to those addressed in *Investment Serv. Co. v. North Pacific Lumber Co.*, 261 Or. 43, 492 P.2d 470 (1972). In *Investment Service*, the defendant purchased three shipments of lumber from a lumber producer who had previously transferred a security interest in its inventory to a bank. *Id.* 492 P.2d at 471. The defendant received the first shipment and remitted full payment directly to the bank. However, the lumber was later discovered to be defective. *Id.* The lumber producer then delivered the second shipment and again assigned the invoice to the bank. *Id.* The defendant partially offset its claim for the defective lumber by reducing its payment to the bank for the second shipment. *Id.* By the time the third delivery arrived, the defendant had determined the amount of loss on the first transaction and deducted the remaining amount from its payment for the third shipment. *Id.*

The bank claimed that the defendant did not have any right of setoff. The court, however, disagreed. *Id.* The court relied upon UCC § 9–318 and concluded that

> [a]n assignee of a contract for the sale of the lumber is subject to any setoff the purchaser of the lumber might have because of a defect in the lumber sold. The setoff is available for use against any claim made by the assignee regardless of whether it has any connection with the claim asserted in the assignee's complaint.

*Id.*

The bank further argued that the setoff, if allowed, would impermissibly defeat the bank's security interest. *Id.* at 472. However, the court noted that the bank had directly benefited from the original overpayment:

> When [the lumber producer] assigned the invoice to the bank the bank took it subject to the defendant's right of offset for the defective lumber. *When the defendant purchaser overpaid the bank because it did not know the lumber was defective, the bank became indebted to the defendant. The assignment and payment to the bank created a new relationship between the*

---

5. Haines Terminal contends that Security Pacific has waived its argument that Weyerhaeuser had a legal right to withhold the $23,450 under AS 45.09.318(a)(1). This court has adopted a liberal approach in determining whether an issue or theory was raised in a lower court proceeding. *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985). We have recognized that a litigant "need not have expressly presented every theory supporting an argument before the trial court, but can expand or refine details of an argument otherwise preserved on appeal." *Id.*

While Security Pacific admittedly failed to cite AS 45.09.318(a)(1) to the trial court, it did argue that Weyerhaeuser had a right to offset its overpayments on prior transactions. We are satisfied that, under our liberal approach to this issue, Security Pacific adequately preserved this argument for appeal. *See Independent Nat'l Bank v. Westmoor Elec., Inc.*, 164 Ariz. 567, 573, 795 P.2d 210, 216 (1990) (failure to cite Arizona's version of § 9–318 held insufficient to establish waiver where litigant argued that assignee bank was subject to claims and defenses arising from contract between account debtor and assignee).

*bank and the defendant.* Stated simply, because of the defective lumber in the first shipment, the defendant's overpayment, and the bank's receipt of the overpayment, the bank now owes defendant money.

*Id.* (emphasis added).

The reasoning of the court in *Investment Service* is applicable to the facts of the present case. Here, the original overpayment was made directly from Weyerhaeuser to Security Pacific for credit to the account of Chilkoot Lumber. Thus, Security Pacific had received a $23,000 windfall on the prior transaction. Weyerhaeuser's right of setoff was superior to the perfected security interest of Security Pacific and therefore necessarily superior to any claim to the secured property on the part of Haines Terminal.

Finally, Haines Terminal maintains that the superior court's order should be affirmed on the grounds that Security Pacific's counsel misrepresented to the court that all of the proceeds of the sale of the lumber would be applied to Chilkoot Lumber's indebtedness to Security Pacific. Haines Terminal cites to the trial court's order, which states that

> [t]o the extent that the representations of counsel to the court are shown to be in fact what has happened to the funds in this case, then the $140,000 bond posted by intervenor shall be released to the intervenor. That is, when intervenor or the defendant shows by affidavit *that the proceeds of the sale of this lumber all went to intervenor,* then the bond shall be released.

(Emphasis added). While it is true that not all of the proceeds from the sale went directly to Security Pacific, we nonetheless find Haines Terminal's argument unpersuasive. First, the record indicates that counsel for Security Pacific informed the court prior to the issuance of its order that Weyerhaeuser would receive a portion of the proceeds. At oral argument below, the following exchange took place:

> *The Court:* [W]hat [counsel for Haines Terminal] is saying is ... how does he know that the proceeds are all going to go to Security National instead of Chilkoot Lumber?

> *Counsel for Security Pacific:* The proceeds are all going to go to Security Pacific and Weyerhaeuser. There are already commitments as to how that is supposed to be applied.

Based on this exchange, we are satisfied that no misrepresentation on the part of Security Pacific's counsel took place.

More importantly, the trial court's award of the $23,450 to Haines Terminal out of Security Pacific's bond was predicated on its conclusion that "to the extent that [the money] was going to go to any unsecured creditor, it goes to [Haines Terminal]." As discussed above, we hold that Weyerhaeuser's right of setoff was in fact superior to Security Pacific's interests in the proceeds, and *a fortiori,* to Haines Terminal's claim to the funds. Thus, to the extent that the trial court's order required all of the money from the sale of the lumber to go to Security Pacific, as opposed to Weyerhaeuser, it was in error.

### CONCLUSION

We conclude that the trial court erred as a matter of law in releasing $23,450 from Security Pacific's bond to Haines Terminal. We therefore reverse the trial court's order.

REVERSED.

BRYNER, J. Pro Tem., not participating.