No. 16,432.

MATSON ET AL. *v.* WHITE ET AL.

(220 P. [2d] 864)

Decided June 5, 1950.   Rehearing denied July 10, 1950.

Mr. B. O. WHEELER, Mr. HYMAN A. GOODSTEIN, for plaintiffs in error.

No appearance for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

ONE Fred Harris owned lots 25, 26, 27, 28, 29 and 30 in block 42, Pleasant View Second Addition, Jefferson county, Colorado. A well was located on lot 27.

On August 22, 1947, Harris contracted to sell lots 28, 29 and 30 to defendants in error, who were plaintiffs in the trial court and to whom we hereafter refer as plaintiffs. The agreement was in the form of a receipt and option in which Harris agreed to convey said property "together with all improvements thereon and the right to use water from a well on adjoining property at a cost for such water to be agreed upon."

On February 26, 1948, the said Harris conveyed by warranty deed to Charles W. Matson and Emily H. Matson lots 25, 26 and 27 of block 42 in said addition. The Matsons were defendants in the trial court and are plaintiffs in error here. We will hereinafter refer to them as defendants. Simultaneously with the execution of the conveyance of lots 25, 26 and 27 to defendants, Harris and defendants entered into an agreement which provided that defendants, "will furnish household water for improvements on the property owned by party of the second part [Harris], in consideration of the payment of $2.50 per month, as long as present well located on property owned by parties of the first part continues to operate and furnish water." It was further provided in the agreement that, "in case of any repairs that the respective parties shall pay their pro-rata share."

On March 9, 1948, in consummation of the contract previously entered into between Harris and plaintiffs, a deed was executed and delivered by Harris, conveying lots 28, 29 and 30 to plaintiffs, but there was not in-

corporated in said deed, or in any manner mentioned, any right of Harris to use water from the adjoining property which Harris had sold to defendants on February 26, 1948. However, with delivery of the deed to plaintiffs Harris executed an assignment to them of the contract dated February 26, 1948, under which defendants had agreed to furnish household water "for improvements on the property" owned by Harris. Said assignment was endorsed on the original agreement, and was in the following form:

"March 9, 1948

"For and in consideration of one dollar the receipt of which is hereby acknowledged, I hereby assign and set over to James Harrison White and Marjory E. White all my right and interest in and to the within contract.

"Wit.

"Claude L. Cox                                    Fred Harris."

The record does not disclose that defendants had any knowledge concerning the said assignment, nor is there anything which indicates a consent thereto.

It appears that from March 30, 1948, to September 16, 1949, defendants supplied water to plaintiffs for $2.50 per month, and during six weeks of the early summer of 1949, when the well was shut down for repairs, defendants purchased water from another neighbor and diverted it into plaintiffs' pipes in order thus to supply their needs. The repair work was necessitated by reason of a cavein which occurred when the well commenced pumping dry, and defendants drilled the well deeper at a cost of $295.48 in an attempt to get more water. However, more water was not thus secured. Defendants then notified plaintiffs that, "The supply of water in our well has become so low that it cannot furnish an adequate amount," and that water could not be furnished them after September 15, 1949. Plaintiffs thereupon brought this action in which they prayed that defendants be restrained from shutting off the water supply, and they alleged that the plaintiffs "by reason

of a written agreement and otherwise have been given the right to the use of water from a well located and situate on Lot 27 above described; and that said agreement as aforesaid has been in existence since August 22, 1947; that the plaintiffs herein have exercised their rights under said agreement since August 22, 1947 * * *." The defendants denied that plaintiffs had any continuing right to receive water from the well, and alleged that they had furnished water to plaintiffs on a monthly basis only under a verbal agreement with plaintiffs to supply water only so long as the well provided water in excess of defendants' own requirements.

The trial court entered findings, which are in part as follows: "(a) That the plaintiffs are entitled to use of water from the well in question in this matter; (b) That the defendants shall supply the plaintiffs with water and are to promptly connect the aforesaid well and restore the use of water to plaintiffs as it heretofore existed." The trial court limited the consumption of water by the plaintiffs to 300 gallons per day, and ordered that plaintiffs install a water meter "where the defendants may readily inspect and read such water meter," and that plaintiffs pay to defendants $2.50 per month "as rental for the use of water."

As grounds for reversal defendants contend that there is no legal obligation on their part to furnish water to plaintiffs because: (1) There is no privity of contract between plaintiffs and defendants; (2) The assignment from Harris to plaintiffs is not binding upon defendants; (3) The right of Harris to use water from defendants' land was a personal right in Harris and did not "run with the land"; and (4) That since, in the deed from Harris to plaintiffs there was no reference to rights in the grantees to receive water from the well on the adjoining lot, it was error to consider the provision relating to water which was contained in the original contract in consummation of which the deed was issued. Defendants further argue that the trial court erred in

imposing conditions upon the parties which, in effect, "constituted the drawing of a new contract by the court for the parties"; and in refusing to require of plaintiffs a pro-rata contribution to the expense of repairing the well.

### Questions to be Determined.

First: *Where a purchaser of lots at the time of delivery of deed agrees by separate written contract to supply household water for improvements upon adjoining lots owned by vendor, can said purchaser refuse to supply water to the assignee of the vendor, on the ground that he did not consent to the assignment and that no privity of contract exists between the purchaser and the assignee of the vendor, in the absence of any prohibition in the contract against the assignment thereof?*

█ This question is answered in the negative, and this answer disposes of all arguments offered in support of the contention that there is no legal obligation on the part of defendants to supply the household water involved to plaintiffs. There can be no question concerning the validity of the contract between defendants and Harris which obligated defendants to "furnish household water *for improvements on the property*" (italics ours) owned by Harris. It is clear from the record that the only property within the contemplation of the parties, was that subsequently deeded by Harris to plaintiffs. When Harris deeded this property to plaintiffs he assigned his interest in the contract requiring defendants to deliver water for the "improvements on the property," and he delivered the original contract to plaintiffs with the assignment endorsed thereon. But it is contended by defendants that the assignment from Harris to plaintiffs was without legal effect, since the contract itself contained no express provision that it should be binding upon the assigns of either of the parties. The rule of law here applicable is stated in 6 C.J.S., page 1070, section 24, as follows: "A contract,

not involving personal trust and confidence nor being for personal services, and the rights arising out of the contract, are generally assignable."

■ Under ordinary circumstances, and in the absence of facts bringing a case within certain exceptions, it is not necessary to the validity of an assignment of a contract that the consent of the other contracting party be had thereto. The rule is well stated in 4 American Jurisprudence, page 238, section 11, as follows: "In the absence of an express provision against assignments, a contract which does not involve personal skill, trust, or confidence is assignable without the consent of the other party, whereas contracts which do involve those qualities are not assignable; but if the other party to such a contract assents thereto, a valid assignment may be made."

There are no facts present in the instant case which remove it from the application of the general rules above quoted. In the case of *Austin v. Colorado Dairymen's Ass'n*, 81 Colo. 546, 256 Pac. 640, our court has recognized the doctrine that consent of the other contracting party is not essential to the validity of an assignment.

Since we determine that the assignment from Harris to plaintiffs was in all respects valid, it becomes unnecessary to consider the effect of the deed from Harris to plaintiffs, in which no mention was made of the obligation of Harris to furnish water as provided by the contract of purchase theretofore signed by Harris and plaintiffs; neither is it necessary to determine whether, as between the parties under the circumstances here present, the right to water was an appurtenance running with the land.

■ Second: *Did the trial court err in limiting the consumption of water by plaintiffs to 300 gallons per day, and in directing plaintiffs to install a water meter?*

This question is answered in the affirmative. The assigned contract, upon which plaintiffs were entitled

to rely, provided that defendants would furnish household water "as long as present well located on property owned by parties of the first part [defendants] continues to operate and furnish water." Admittedly, the said well is operating and furnishing water in substantial quantities. The contracting parties did not see fit to incorporate in the written agreement any limitations except those above quoted. The trial court was without authority to add conditions not contemplated by the parties. *Sunset Oil Co. v. Whistleman*, 77 Colo. 570, 237 Pac. 1116. In *Blachley v. Coles*, 6 Colo. 349, our court said: "It is the business of courts to pass upon the rights of parties as they find them, and not to make contracts for parties."

■ Third: *Did the trial court err in refusing to require plaintiffs to pay defendants their pro-rata share of the expense incurred in repairing the well?*

This question is answered in the affirmative. The contract of plaintiffs' reliance contained the following provision: "It is understood that in case of any repairs that the respective parties shall pay their pro-rata share." It is undisputed that necessary repairs were made by the defendants, and that plaintiffs have not contributed their "pro-rata" share of the cost of said repairs. Defendants alleged this expenditure, prayed for general relief, and by oral motion asked judgment for the contribution from the defendants for their "pro-rata" share of the cost of the repairs. The trial court erred in denying the relief asked by defendants in this phase of the case.

The argument of defendants that: "The trial court erred in entering a restraining order against the defendants because by the evidence adduced, the capacity of the well will prevent the defendants from performance, and the said restraining order will require the continuous supervision by the court," is not supported by the record.

The judgment is affirmed in part, and reversed in

part, and the cause remanded with direction to enter judgment consistent with the views herein expressed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE HAYS dissent.