**In re S & D FOODS, INC., f/k/a Consolidated Pet Foods, Inc., Debtor.**

**CONSOLIDATED PET FOODS, INC., et al., Plaintiff(s),**

**v.**

**MILLARD REFRIGERATED SERVICES, INC., et al., Defendant(s).**

**Bankruptcy No. 89 B 06041 J. Adv. No. 89 J 1230.**

United States Bankruptcy Court, D. Colorado.

Jan. 26, 1990.

Garry R. Appel, Michael J. Guyerson, and Darrell Daley, Esq., Rothgerber, Appel, Powers & Johnson, Denver, Colo., for plaintiffs.

Stephen W. Seifert, Eric R. Jonsen, and Gregory J. Anderson, Fairfield and Woods, P.C., Denver, Colo., Leo A. Knowles, James G. Powers, Esq., McGrath, North, Mullin & Kratz, P.C., Omaha, Neb., for defendants.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER came on for hearing on January 17, 1990, upon Plaintiff's Motion

for Partial Summary Judgment and Defendants' Motion to Dismiss.

## UNDISPUTED FACTS

1. On September 1, 1988, the Debtor and Millard Refrigerated Services, Inc. ("MRS") entered into a Confidentiality Agreement.

2. On November 2, 1988, Debtor executed and delivered to Millard Refrigerated Services, Inc. ("MRS") a Promissory Note payable in blank in the principal amount of $1,000,000.00 and in turn received $1,000,000.00. The Note, in the margin, contained the following: "This Note is guaranteed by Donald Kunkle" and the signature of Donald Kunkle. At the time, Donald Kunkle was the President and sole shareholder of the Debtor.

3. On November 28, 1988, the Debtor, executed a Promissory Note payable to Larry A. Larsen in the principal sum of $2,000,000.00. Larry Larsen was the CEO and sole shareholder of MRS.

4. On December 7, 1988, Larsen funded the $2,000,000.00 loan to the Debtor by two wire transfers. The Debtor, in turn, on December 7, 1988, wire transferred $1,012,356.16 to MRS in full satisfaction of the November 2, 1988 Promissory Note. In return Larsen took security interests in assets of the Debtor securing the $2,000,000.00 loan. The status of those security interests are in dispute between the parties in another case wherein the Debtor is asserting the $2,000,000.00 was an equity contribution by Larsen in the Debtor.

5. The Debtor filed its Chapter 11 Petition on May 5, 1989.

6. On July 28, 1989, this Court orally approved an Asset Purchase Agreement whereby Consolidated Acquisitions, Inc. ("CAI") purchased certain assets of the Debtor which included, *inter alia*, all the Debtor's "claims, actions, lawsuits, choses in action and other rights," including all avoidance claims under Bankruptcy Code §§ 544 to 549.

7. In reliance on the Court's oral ruling on July 28, 1989, the Debtor, on August 4, 1989, executed in favor of CAI an Assignment of Contracts and Intangibles which, assigned, *inter alia*, "all rights of Debtor exercisable pursuant to any statute, rule or regulation, choses in action, things in action, claims, demands, defenses to claims (both in law and in equity) The foregoing shall include but shall not be limited to all rights of the Debtor, including but not limited to claims for payment or voiding of liens of the Debtor which, as of the date hereof, arising under any section of the Bankruptcy Code, 11 U.S.C. §§ 544, 545, 547, 548, 549."

8. The Court's written Findings of Fact, Conclusions of Law and Order Approving Sale of Assets Free and Clear of Liens entered August 14, 1989.

9. On October 30, 1989, CAI and the Debtor filed the within Complaint alleging:

First Claim: Avoidance of Preferential Transfer under § 547 re the payment of the November 2, 1988 Promissory Note on December 7, 1988, asserting that Kunkel was an "insider creditor" of the Debtor.

Second Claim: Avoidance of the Preferential Transfer under § 547 re the payment of the November 2, 1988 Promissory Note on December 7, 1988, asserting that MRS was an "insider creditor" of the Debtor.

Third Claim: Avoidance of Fraudulent Conveyance under § 548 re the payment of the November 2, 1988 Promissory Note on December 7, 1988.

Fourth Claim: Avoidance of Fraudulent Conveyance under § 548 re the execution of the November 2, 1988 Promissory Note.

Fifth Claim: Objection to Claim under § 502 re two claims filed by MRS in the amounts of $18,735.20 and $7,423.86.

Sixth Claim: Equitable Subordination under § 510(c) re any claims the Defendants may have against the Debtor, including any claims to an equity interest.

Seventh Claim: Breach of Confidentiality Agreement between Debtor and MRS.

10. On November 17, 1989, Plaintiffs amended their Complaint asserting an additional Claim alleging that during August, 1988, Debtor and MRS formed a joint ven-

ture which terminated in approximately February, 1989, and that MRS should share in the expenses of that joint venture along with the Debtor.

## MOTION TO DISMISS

Defendants assert that (1) CAI lacks standing to assert the avoidance claims under §§ 547 and 548; (2) the Debtor is precluded from asserting the avoidance actions; (3) neither CAI or the Debtor are entitled to equitable subordination; and (4) CAI lacks standing to assert a claim for breach of the Confidentiality Agreement.

■ *1. Standing of CAI to assert avoidance claims.* The Courts have consistently held that only the trustee, the debtor in possession, or other representative of the estate under § 1123(b)(3)(B), may enforce the avoidance powers under §§ 547 and 548. *See, e.g., Delgado Oil Company, Inc. v. Torres,* 785 F.2d 857 (10th Cir.1986); *In re Sweetwater,* 884 F.2d 1323 (10th Cir.1989). It is clear beyond cavil that CAI cannot assert these avoidance actions.

■ *2. Debtor's ability to assert avoidance claims.* Where a third party has acquired assets of the estate, even a trustee or debtor in possession is precluded from asserting avoidance actions which benefit only that third party. *United States v. General Resources, Ltd.,* 204 F.Supp. 872 (D.Colo.1962); *In re Sapolin Paints, Inc.,* 11 B.R. 930 (Bankr.E.D.N.Y. 1981); and *In re Texas General Petroleum Corp.,* 58 B.R. 357 (Bankr.S.D.Tex.1986). Here, recovery of the alleged preference or alleged fraudulent transfer would only benefit CAI and not the Debtor's estate or any of its creditors.

Plaintiffs argue that the general rule is that neither a trustee in bankruptcy nor a debtor in possession can assign, sell, or otherwise transfer the right to maintain avoidance actions and that if such a purported assignment is made, it is ineffective, leaving that right in the debtor in possession. *In re Texas General Petroleum Corp., supra,* and *Grass v. Osborn,* 39 F.2d 461 (9th Cir.1930). Thus, it is argued,

the Debtor retained the right to bring the avoidance actions but sold and assigned the *rights to the proceeds* of those actions to CAI. That is the epitome of a circular argument. Each of the cases cited by Plaintiffs, *In re Amarex, Inc.,* 74 B.R. 378 (Bankr.W.D.Okla.1987) aff'd, 88 B.R. 362 (W.D.Okla.1988); *In re Kroh Bros. Development Co.,* 100 B.R. 487 (Bankr.W.D.Mo. 1989); and *In re Tennessee Wheel & Rubber Co.,* 64 B.R. 721 (Bankr.M.D.Tenn. 1986), involved the pursuit of avoidance actions by the reorganized debtor under specific reservations in the plans of reorganization, much the same as in *In re Sweetwater, supra.* And in each of those cases the courts found specifically that the estate of the debtors or the creditors thereof would benefit from the proceeds of the avoidance actions. Here, as stated *supra,* only CAI will benefit from the proceeds of any such avoidance actions because in the purchase of the assets from the Debtor it guaranteed that unsecured creditors would receive 50% of their claims (capped at a total of $2.5 million for all unsecured claims) and no more.

CAI argues that "Any recovery from the avoidance actions has been purchased, as property of the estate, by CAI. This does not contravene the mandate of 11 U.S.C. § 550 that all such recovery be retained for the benefit of the estate since CAI has provided consideration for the purchase. The consideration inures to the benefit of the estate and increases the likelihood of a successful reorganization ... CAI has in effect paid the estate up front for the proceeds of the avoidance claims by agreeing to pay 50% of all unsecured claims and other substantial consideration." That same argument could have been made by the assignee Marmid Energy Co. in *In re Texas General Petroleum Corp., supra,* but it was of no avail there.

CAI, at oral argument of the Motion, and in their Response to Defendants' Motion to Dismiss, in a not so veiled threat, assert that if neither CAI nor the Debtor were allowed to pursue these avoidance actions, the entire Asset Purchase Agreement would come tumbling down, thus depriving the estate and its creditors the benefit of

that agreement, and therefore, the estate would indeed benefit by allowing these actions to go forward in order to preserve the Asset Purchase Agreement. If CAI wants to bring an action to rescind the Purchase Agreement or for breach thereof, that is its prerogative. Although, by way of *dicta*, this Court sees little, if any, chance of success in such an endeavor if it is based solely on CAI and the Debtor being unable to pursue these avoidance actions. The Court is unaware of any warranties given by the Debtor in connection with these avoidance actions and a mistake of law does not relieve a party from his contract. Besides, CAI was represented by competent counsel throughout—counsel who is extremely well versed in bankruptcy law. Nevertheless, this Court must conclude that neither the Debtor nor CAI can maintain the avoidance actions set forth in the First, Second, Third and Fourth Claims in the Complaint and, accordingly, those claims must be dismissed.

*3. Plaintiffs entitlement to equitable subordination.* After the commencement of the bankruptcy, CAI purchased its $3.5 million claim against the Estate from FBS Business Finance Corp. for $2.5 million. CAI now apparently seeks to subordinate Defendants' claims to its own. CAI cannot maintain this claim for two reasons: (1) it does not hold any claim against the estate, and (2) it can show no injury even if it does hold a claim.

Part of the consideration given by CAI under the Asset Purchase Agreement was "[a] release and waiver of the secured and unsecured claims of FBS Business Credit (as of the date of closing) and the Buyer [CAI] as assignee of FBS ..." the secured claim was, in essence, released by a credit bid of the full "allowed secured claim." The entire balance of the FBS and CAI claim was released and waived by the Asset Purchase Agreement itself, which went on specifically to provide that "Buyer [CAI] shall not be able to assert a deficiency claim as an unsecured creditor." Thus, CAI has no claim against the estate to which the claims of Defendants can be subordinated. Equitable subordination is available only to subordinate "all or part of

an allowed claim to all or part of another allowed claim ..." 11 U.S.C. § 510(c).

■ Even if CAI does now hold a claim against the estate by virtue of its purchase of the FBS claim, it is not entitled to equitable subordination as a matter of law. It purchased the FBS claim well after the commencement of the bankruptcy estate for a substantial discount. Equity does not aid those who purchase their claims after the alleged misconduct of other creditors and after the intervention of bankruptcy and at distressed prices. *In re W.T. Grant Co.*, 4 B.R. 53 (Bankr.S.D.N.Y.1980); *In re Saxon Industries*, 39 B.R. 945 (Bankr.S.D. N.Y.1984).

■ Assuming that a debtor in possession could maintain an equitable subordination action against a creditor, it does not follow that under the facts herein that this Debtor may do so. It no longer has any pecuniary interest in the estate because it sold everything to CAI. And even if it did retain sufficient interest to maintain such an action, it would be a frivolous exercise because all unsecured creditors will receive a maximum of 50% of their claims and Defendants' will likewise receive 50% of their allowed unsecured claims *whether or not* their claims are subordinated. Defendants have made no secured claims in this estate. Therefore, this Court concludes that the Plaintiffs' Sixth Claim must be dismissed insofar as it seeks to subordinate any of Defendants' monetary claims against the Debtor's estate.

The Sixth Claim also seeks to have any of Defendants' claims to an equity interest in the Debtor subordinated. Firstly, these Defendants have not filed any such claim. Any ruling herein prior to Defendants making such a claim would be an advisory ruling in the absence of a case or controversy. Secondly, because equity interests can receive payment only after all creditors have been paid in full, including unsecured creditors, there will never be a distribution to equity holders in this case by virtue of the Asset Purchase Agreement wherein the maximum the unsecured creditors will receive is 50 cents on the dollar. For this

**38**

Court to indulge in making a determination that any, as of yet unclaimed, equity interests of the Defendants is to be subordinated to other equity interests would be pointless. Therefore, the remainder of the Plaintiffs' Sixth Claim will be dismissed.

 *4. CAI's standing re the Confidentiality Agreement.* Defendants argue that CAI lacks standing to assert a claim for breach of the Confidentiality Agreement between Debtor and MRS. Their argument is that this was a "personal" contract and therefore the rights under that contract cannot be assigned. *Scott v. Fox Bros. Enterprises, Inc.*, 667 P.2d 773 (Colo. App.1983); *Arkansas Valley Smelting Co. v. Belden Min. Co.*, 127 U.S. 379, 8 S.Ct. 1308, 32 L.Ed. 246 (1888); and *Matson v. White*, 122 Colo. 79, 220 P.2d 864 (1950). However, those cases stand for the proposition that a party to a "personal" contract may not assign the contract such that the assignee can demand *performance* from the other party to the contract. They do not stand for the proposition that once such a contract has been breached the chose in action for damages occasioned by the breach cannot be assigned. That is what was assigned here to CAI—the chose in action for money damages occasioned by the alleged breach of the contract by MRS. There is no reason CAI may not maintain such action for money damages. Therefore, this Motion to Dismiss must be denied as to the Plaintiffs Seventh Claim.

The Motion to Dismiss does not discuss the joint venture debt claim assert by the Plaintiffs in their Amended Complaint filed November 17, 1989, nor does it speak to the Plaintiffs Fifth Claim. Accordingly, those two claims remain.

The Plaintiffs' Motion for Partial Summary Judgment spoke only to their First, Second, Third, and Fourth Claims. The Court has determined that these claims must be dismissed and, therefore, the Motion for Partial Summary Judgment must be denied. It is, therefore,

ORDERED that the Plaintiffs' Motion for Partial Summary Judgment is denied.

FURTHER ORDERED that the Defendants' Motion to Dismiss is granted as to the First, Second, Third, and Fourth Claims in the Complaint and denied as to the Seventh Claim.