2013 COA 88

**MEDICAL LIEN MANAGEMENT, INC.,**
a Colorado corporation, Plaintiff–
Appellant and Cross–Appellee,

v.

**ALLSTATE INSURANCE COMPANY,**
an Illinois corporation, Defendant–
Appellee and Cross–Appellant.

**Court of Appeals No. 12CA0691**

Colorado Court of Appeals,
Div. II.

Announced June 6, 2013

City and County of Denver District Court No. 10CV3833, Honorable Norman D. Haglund, Judge

Robinson, Waters & O'Dorisio, P.C., Otto K. Hilbert, II, Zachary P. Mugge, Michael W. Davis, Denver, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Wheeler Trigg O'Donnell, LLP, Terence M. Ridley, Evan Stephenson, Elizabeth Johnston, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by JUDGE CASEBOLT

¶1 In this breach of assignment action, plaintiff, Medical Lien Management, Inc. (MLM), appeals the judgment dismissing its complaint against defendant, Allstate Insurance Co. (Allstate), under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief can be granted. Allstate cross-appeals, contending that the court erred when, in its order granting the motion to dismiss, it failed to apply the heightened pleading standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). We conclude that the court erred in dismissing MLM's complaint and that the heightened pleading standard employed in *Twombly* does not apply. Accordingly, we reverse and remand for further proceedings.

## I. Background

¶2 The following facts either are set forth in MLM's complaint, which we must accept as true and view in the light most favorable to MLM, *see Hemmann Mgmt. Servs. v. Mediacell, Inc.*, 176 P.3d 856, 857 (Colo.App. 2007), or are contained in documents to which the complaint refers, *see Yadon v. Lowry*, 126 P.3d 332, 335 (Colo.App.2005) (in ruling on a C.R.C.P. 12(b)(5) motion to dismiss, a court is permitted to consider a document that is referred to in, but not attached to, the complaint without converting the motion to dismiss into a motion for summary judgment).

¶3 In October 2005, Fred Martinez was injured in an automobile accident caused by a tortfeasor insured by Allstate. Martinez did not have health or other insurance to pay for medical treatment. Martinez commenced an action against the tortfeasor.

¶4 In March 2007, in consideration for payment by MLM of his medical bills, Martinez executed a written agreement (agreement) granting MLM a lien on, and assigning his rights to, any and all proceeds derived from his personal injury claim in an amount equal to the fees and costs of the medical

treatment paid by MLM. MLM eventually paid $9,938 for such treatment.

¶ 5 In April 2007, MLM sent, and Allstate, Martinez, and Martinez's attorney received, a document entitled "Notice of Lien or Assignment of Proceeds" (notice of assignment). The notice of assignment listed Martinez's name and address and the date of the accident, identified Allstate as the insurance carrier for the tortfeasor, provided MLM's contact information, and contained instructions to issue payment for the medical expenses to MLM. The notice of assignment also stated that MLM had retained or been assigned a lien or assignment of proceeds from Martinez's personal injury claim based on its payment of Martinez's medical bills. Attached to the notice of assignment was a copy of the agreement and an account statement listing Martinez's medical providers and the amounts they had charged.

¶ 6 In October 2008, Martinez settled his personal injury claim against the tortfeasor insured by Allstate. Allstate issued payment to Martinez without paying MLM.

## II.  Procedural History

¶ 7 MLM commenced this action against Martinez and Allstate, asserting claims against Martinez for breach of contract, unjust enrichment, and account stated. MLM also asserted a claim against Allstate for breach of assignment. MLM later obtained a default judgment against Martinez, which has not been paid.

¶ 8 Allstate moved to dismiss under C.R.C.P. 12(b)(5), asserting that the complaint failed to state a claim upon which relief could be granted. It attached the agreement to its motion. It asserted that language in the agreement (discussed below) merely authorized, but did not instruct or direct, any insurer for the tortfeasor to pay MLM. After MLM submitted its response, which included the notice of assignment and account statement, and Allstate submitted its reply, the trial court granted Allstate's motion. The court noted the following provisions of the agreement:

> [Martinez] instructs and directs [his] attorney to issue payment directly to MLM immediately after receipt of funds for such

sums outstanding to MLM. [Martinez] instructs and directs attorney to withhold upon receipt of any funds and place in a trust account such sums as may be due and owing to MLM. [Martinez] authorizes the liable party or parties of the insurance carriers indemnifying such liable party or parties to issue payment directly to MLM to satisfy sums due under this Lien and Security Agreement. [Martinez] hereby assigns to MLM all causes of action to the extent of the sums due under this Lien and Security Agreement that [Martinez] might have or that may exist in [Martinez's] favor.

¶ 9 In its analysis, the court observed that Allstate was not a signatory to the agreement, and stated:

> "Instruct and direct" does not equal "authorize." It would be contrary to the generally accepted meaning of these words to find otherwise. Moreover, since MLM authored the [a]greement, it could have used the same language of instruct and direct; but it did not. Therefore the notice of assignment was a request and Allstate chose for whatever reason to pay Martinez instead. It was then Martinez's (or his attorney's) duty to pay the amount due to [MLM].

¶ 10 The court also concluded that there was no underlying debt obligation between Allstate and Martinez; that MLM stood in the shoes of Martinez as an assignee; and that MLM did not possess rights beyond what Martinez would have against Allstate. It held that, because Martinez was not asserting a personal injury claim against Allstate, MLM had no claim against Allstate. It therefore dismissed MLM's complaint, and this appeal followed.

## III.  Breach of Assignment Claim

¶ 11 MLM asserts that the court erred in granting Allstate's C.R.C.P. 12(b)(5) dismissal motion for failure to state a claim. We agree.

### A.  Standard of Review

¶ 12 A motion to dismiss pursuant to C.R.C.P. 12(b)(5) tests the sufficiency of the

complaint to determine whether the plaintiff has asserted a claim or claims upon which relief can be granted. *Hemmann Mgmt. Servs.,* 176 P.3d at 858. Motions to dismiss under C.R.C.P. 12(b)(5) are "viewed with disfavor and are rarely granted under our 'notice pleadings.'" *Dunlap v. Colo. Springs Cablevision, Inc.,* 829 P.2d 1286, 1291 (Colo. 1992) (quoting *Davidson v. Dill,* 180 Colo. 123, 131, 503 P.2d 157, 162 (1972)). Because it presents a question of law, we review de novo a dismissal of a complaint for failure to state a claim. *Dotson v. Bernstein,* 207 P.3d 911, 912 (Colo.App.2009).

¶ 13 "A complaint need not express a complete recitation of all facts that support the claim, but need only serve notice of the claim asserted." *Story v. Bly,* 217 P.3d 872, 876 (Colo.App.2008), *aff'd,* 241 P.3d 529 (Colo. 2010). Like the trial court, in considering whether a complaint fails to state a claim, we must accept as true all averments of material fact and must view the allegations of the complaint in the light most favorable to the plaintiff. *Hemmann Mgmt. Servs.,* 176 P.3d at 858. We will uphold a trial court's grant of such a motion only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Dunlap,* 829 P.2d at 1291.

### B. Law

¶ 14 An assignment is a voluntary transfer of some right or interest to another person. *State Farm Fire & Cas. Co. v. Weiss,* 194 P.3d 1063, 1067 (Colo.App.2008). No particular formalities are required to effect a valid assignment. *People v. Adams,* 243 P.3d 256, 263 (Colo.2010) (citing *Lookout Mountain Paradise Hills Homeowners' Ass'n v. Viewpoint Assocs.,* 867 P.2d 70, 73–74 (Colo.App.1993)). "However, the intent to make the assignment must be apparent." *Lookout Mountain Paradise Hills Homeowners' Ass'n,* 867 P.2d at 73. That intent may be evidenced by the written instruments executed by the parties or inferred from the acts and conduct of the assignor. *Phoenix Capital, Inc. v. Dowell,* 176 P.3d 835, 845 (Colo.App.2007) (citing *Lookout Mountain Paradise Hills Homeowners' Ass'n,* 867 P.2d at 73). In addition, "[t]o be sufficient, a description of the matter to be assigned must identify with certainty the property," but "such description may be aided by competent extraneous evidence." *Ford v. Summertree Lane Ltd. Liab. Co.,* 56 P.3d 1206, 1209 (Colo.App.2002).

¶ 15 "After notice of a valid assignment, payment to the assignor or any person other than the assignee is at the debtor's peril and does not discharge him from liability to the assignee." *Trevino v. HHL Fin. Servs., Inc.,* 928 P.2d 766, 768–69 (Colo.App. 1996) (citing *Mid–States Sales Co. v. Mountain Empire Dairymen's Ass'n,* 741 P.2d 342, 347 (Colo.App.1987)), *aff'd,* 945 P.2d 1345 (Colo.1997); *cf.* § 4–9–406(a), C.R.S.2012 (Uniform Commercial Code—Secured Transactions: "After receipt of the notification [stating the amount due has been assigned and that payment is to be made to the assignee], the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor."). No particular form of notice is required, but the notice to the account debtor must be sufficiently specific and direct to inform it that an assignment has been made. 29 *Williston on Contracts* § 74:56 (4th ed.2012).

¶ 16 If there is a valid assignment, an assignee may maintain an action upon the assigned claim. *See U.S. Fax Law Ctr., Inc. v. T2 Technologies, Inc.,* 183 P.3d 642, 644 (Colo.App.2007); *Gunnison Cnty. v. Bd. of Assessment Appeals,* 693 P.2d 400, 403 (Colo. App.1984). However, generally, "an assignee stands in the shoes of the assignor," *Tivoli Ventures, Inc. v. Bumann,* 870 P.2d 1244, 1248 (Colo.1994), and takes "only as good a claim as his assignor had." *McCormick v. Diamond Shamrock Corp.,* 175 Colo. 406, 409, 487 P.2d 1333, 1335 (1971). Therefore, the assignee's claim is generally subject to all equities and defenses that could have been raised by the debtor against the assignor. *Farmers Acceptance Corp. v. DeLozier,* 178 Colo. 291, 294, 496 P.2d 1016, 1018 (1972).

### C. Assignability of Personal Injury Proceeds Before Settlement

[9] ¶ 17 MLM asserts that Martinez validly assigned his right to receive the pro-

ceeds derived from his personal injury claim to MLM. The complaint, however, alleges that the assignment was executed before Martinez settled his claim with Allstate. Therefore, an initial issue is whether, under Colorado law, an individual can validly assign—prior to settlement—the sums to be recovered from his or her personal injury claim. The parties agree, and we concur, that an individual can do so.

¶ 18 If a claim survives the death of the party entitled to sue, it ordinarily may be assigned. *Kruse v. McKenna,* 178 P.3d 1198, 1200 (Colo.2008). Under Colorado law, all causes of action survive death except slander and libel. *See* § 13–20–101(1), C.R.S.2012; *see also Matson v. White,* 122 Colo. 79, 83–84, 220 P.2d 864, 866 (1950) (stating that claims involving matters of personal trust or confidence or for personal services are not assignable).

¶ 19 Furthermore, the fact that a claim is conditional or is to be paid in the future from a fund not yet in existence does not defeat assignability. *See Central Nat'l Bank v. Spratlen,* 7 Colo.App. 430, 433, 43 P. 1048, 1049 (1896); *see also* Restatement (Second) of Contracts § 320 (1981) ("The fact that a right is … conditional does not prevent its assignment before the condition occurs.").

¶ 20 Courts in other jurisdictions have held that an individual can validly assign, before settlement, the sums to be recovered from his or her personal injury claim. For example, in *Leon v. Martinez,* the Court of Appeals of New York stated that future proceeds of a personal injury action are assignable because "[a]n assignment may properly relate to a future or conditional right which is adequately identified." 84 N.Y.2d 83, 614 N.Y.S.2d 972, 638 N.E.2d 511, 513 n. 1 (1994) (citing *Speelman v. Pascal,* 10 N.Y.2d 313, 222 N.Y.S.2d 324, 178 N.E.2d 723, 725–26 (1961); 4 Corbin, *Contracts* § 874 (1951); and Restatement (Second) of Contracts §§ 320, 321 (1981)); *see also Hernandez v. Suburban Hosp. Ass'n,* 319 Md. 226, 572 A.2d 144, 148–49 (1990); *Mut. of Omaha Bank v. Kassebaum,* 283 Neb. 952, 814 N.W.2d 731, 737 (Neb.2012); *Achrem v. Expressway Plaza Ltd. P'ship,* 112 Nev. 737,

917 P.2d 447, 448-49 (Nev.1996); *Charlotte–Mecklenburg Hosp. Auth. v. First of Ga. Ins. Co.,* 340 N.C. 88, 455 S.E.2d 655, 657 (1995); *Univ. of Tex. Medical Branch v. Allan,* 777 S.W.2d 450, 452–53 (Tex.App.1989).

¶ 21 Here, MLM's right to recover from the proceeds of Martinez's personal injury claim is clearly conditioned upon Martinez settling his claim or obtaining a judgment in his favor. Until either occurred, there were no proceeds to recover. However, this type of assignment is allowable. *See, e.g., Farmers Acceptance Corp.,* 178 Colo. at 294, 496 P.2d at 1017 ("[I]t is a well settled principle that the right to receive money due or to become due under an existing contract may be assigned even though the contract itself may not be assignable."); *City & Cnty. of Denver v. Jones,* 85 Colo. 212, 214–15, 274 P. 924, 924–25 (1929) (concluding that an assignment of wages to be earned under an employment contract existing on the date of the assignment is valid); *Chicago, Burlington & Quincy R.R. Co. v. Provolt,* 42 Colo. 103, 112–13, 93 P. 1126, 1128 (1908) (concluding that assignment of wages to be earned in the future does not violate any state or federal laws).

¶ 22 In addition, Martinez's personal injury claims accrued on the date of the accident. *Wagner v. Grange Ins. Ass'n,* 166 P.3d 304, 307 (Colo.App.2007); *see* § 13–80–108(1), C.R.S.2012. Thus, Martinez's rights to his claim were assignable as of that date. *See Patton v. Coen & Ten Broeke Carriage Mfg. Co.,* 3 Colo. 265, 268–69 (1877) (stating that, to effect a valid assignment, the property assigned must have an existence—actual or potential—at the time of the assignment).

¶ 23 The assignment of proceeds recovered from a personal injury claim may also be analogized to a subrogation agreement between an insurance company and its insured. The right of subrogation provides that "when an insurer has paid its insured for a loss caused by a third party, it may seek recovery from the third party." *De-Herrera v. Am. Family Mut. Ins. Co.,* 219 P.3d 346, 350 (Colo.App.2009). This is similar to the situation here, where MLM paid Martinez's medical bills—which were caused

by the tortfeasor insured by Allstate—and then sought reimbursement from the obligated parties. *Cf. Arvada Hardwood Floor Co. v. James,* 638 P.2d 828, 830 (Colo.App.1981) (concluding that insured's assignment of its claim against tortfeasor to insurer was valid and gave insurer an additional right to recover against tortfeasor).

¶ 24 Finally, a settlement is effectively a contract to end judicial proceedings, *Cross v. District Court,* 643 P.2d 39, 41 (Colo.1982), and contract rights generally are assignable, *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.,* 874 P.2d 1049, 1052 (Colo.1994). In light of the principle that Colorado law generally favors assignability of rights, *Roberts v. Holland & Hart,* 857 P.2d 492, 495 (Colo.App.1993), and based on the above authorities, we conclude that the proceeds due under a settlement, like the proceeds due under other contracts, may be assigned.

¶ 25 We are aware that *In re Marriage of Lipira,* 621 P.2d 1390, 1391 (Colo.App.1980), may appear to be contrary to our conclusion. There, in a dissolution of marriage proceeding, the husband agreed to pay the wife certain amounts. Subsequently, he failed to make the payments, and the wife obtained a judgment against him. During this time, the husband filed suit against the City of Thornton for an unrelated matter. The husband then executed an assignment, which purported to assign to third parties the proceeds due to him from a settlement of the action. *Id.*

¶ 26 Shortly thereafter, the wife served a writ of garnishment upon the city. The city replied that it was committed to pay the husband pursuant to the settlement agreement as soon as he signed a release and stipulation for dismissal. The division stated that the issue was whether a settlement—which the trial court had held was only tentative because no binding contract existed—could be assigned. *Id.*

¶ 27 In concluding that the garnishment proceedings took precedence over the assignment, the division quoted the Restatement (First) of Contracts § 154(2) (1932), which states:

> An assignment of a right expected to arise under a contract or employment not then existing is operative only as a promise by the assignor to assign the right and an authorization to the assignee to enforce it, but neither imposes a duty upon the obligor nor precludes garnishment by the obligee's creditors.

*In re Marriage of Lipira,* 621 P.2d at 1391. Based on this authority, the division concluded that "the assignment of his rights ... was operative only as a promise by [the husband] to assign his rights to [the third parties] and an authorization to them to enforce that promise." *Id.* The division also stated that "the assignment did not divest [the husband] of the right to the settlement proceeds, but rather merely obligated him to pay the proceeds over to the assignees." *Id.*

¶ 28 We are not bound by the decision of another division of this court. *People v. Moore,* 321 P.3d 510 (Colo.App.2010) (*cert. granted* Sept. 26, 2011). In light of the authorities discussed above, we do not find *In re Marriage of Lipira* persuasive as to the issue presented in this case and therefore decline to follow it. The rule announced in the Restatement (First) of Contracts § 154(2) (1932), and relied upon in *In re Marriage of Lipira,* is also found in the Restatement (Second) of Contracts § 321 (1981). Restatement (Second) of Contracts § 321 reporter's note. Courts in other jurisdictions have cited section 321 for the proposition that an individual can validly assign—prior to settlement—the sums to be recovered from existing litigation. *E.g., Leon,* 614 N.Y.S.2d 972, 638 N.E.2d at 513 n. 1; *Bonanza Motors, Inc. v. Webb,* 104 Idaho 234, 657 P.2d 1102, 1104 (App.1983); *Moore v. Weinberg,* 373 S.C. 209, 644 S.E.2d 740, 746 (App.2007). Additionally, as discussed above, many jurisdictions—without citing section 321—have held that assignments of future litigation proceeds are valid. *E.g., Achrem,* 917 P.2d at 450 ("[W]hen a client assigns rights to the proceeds of a tort action to a creditor, those proceeds no longer belong to the client." (citing *Bonanza Motors, Inc.,* 657 P.2d at 1105; *Leon,* 639 N.E.2d at 514)).

¶ 29 Accordingly, we are not persuaded that the Restatement (First) of Contracts § 154(2) prohibits the assignment here.

## D.  Application

¶ 30  Here, MLM's complaint alleges that Martinez was injured in an automobile accident and that he did not have health insurance or the money to pay for medical treatment.  It further alleges that MLM and Martinez entered into an agreement whereby Martinez "granted MLM a lien on any and all proceeds derived from his personal injury claim in an amount equal to the fees and costs of the medical services provided to [Martinez]."  The complaint also alleges that MLM paid $9,938 for Martinez's medical care.

¶ 31  The agreement, which was drafted by MLM and signed by Martinez and his attorney, states, "[Martinez] hereby grants to MLM all rights to payment from any and all proceeds derived from [Martinez's] claim or claims for personal injury in an amount equal to fees and costs of services provided to [Martinez]."  The agreement later states, "[Martinez] hereby assigns to MLM any and all causes of action to the extent of the sums due under this Lien and Security Agreement that [Martinez] might have or that may exist in [his] favor."

¶ 32  Allstate asserts that the agreement is too vague to assign any causes of action and that the agreement does not purport to assign the proceeds of Martinez's personal injury claim.  We disagree.  When viewed in the light most favorable to MLM, we conclude that the complaint adequately alleges a valid assignment to MLM of Martinez's rights to proceeds resulting from his injury.

¶ 33  The language of the agreement is sufficient to withstand a pleadings challenge as to whether the parties intended to effect a present transfer of the proceeds of Martinez's personal injury recovery.  Both Martinez and his attorney signed the agreement.  *See Lookout Mountain Paradise Hills Homeowners' Ass'n*, 867 P.2d at 74 (finding intent to effect an assignment where the assignor signed the document creating assignment).  In addition, the language "grants to MLM all rights to payment from any and all proceeds derived from [Martinez's] claim or claims for personal injury" indicates an intention to transfer to MLM the right to receive the proceeds of a poten-

tial settlement up to the amount it had advanced to Martinez.  *See Adams*, 243 P.3d at 263 (stating that no particular formalities are required to effect an assignment); 29 *Williston on Contracts* § 74:3 ("No words of art are required to constitute an assignment; any words that fairly indicate an intention to make the assignee owner of a claim are sufficient.").

¶ 34  Moreover, the agreement uses the present tense and states "hereby grants" and "hereby assigns."  Thus, the agreement purports to effect a present assignment of rights and not a contract to make a future assignment.  *Cf.* Restatement (Second) of Contracts § 330(1) ("A contract to make a future assignment of a right, or to transfer proceeds to be received in the future by the promisor, is not an assignment."); *W. United Life Assurance Co. v. Hayden*, 64 F.3d 833, 838 (3d Cir.1995) ("The test is whether the obligee manifests an intention to transfer present ownership of the right." (citing Restatement (Second) of Contracts § 330 cmt. b)).

¶ 35  In addition, the agreement and materials attached to Allstate's motion sufficiently describe the subject matter of the assignment to survive a motion to dismiss.  *Ford*, 56 P.3d at 1209 (finding that the assignment must describe the property to be assigned with certainty but the description may be aided by competent extraneous evidence).  The agreement purports to assign to MLM "all proceeds derived from [Martinez's] claim for personal injury in an amount equal to fees and costs of services provided to [Martinez]."  The notice of assignment sent to Allstate stated that MLM "has retained or been assigned a lien or assignment of proceeds for the charges of healthcare services against all claims of the injured person listed below ... on account of such injuries."  The notice of assignment then listed Martinez as the injured party, stated the date of the accident, and named the tortfeasor.  Further, the account statement attached to the notice of assignment listed Martinez's full name and detailed the costs of services provided to him, including the names of the healthcare providers and the amount MLM paid to each.  Taken together, we are satis-

fied that these statements sufficiently describe the subject matter of the personal injury claim Martinez intended to assign and the sums to which MLM claimed entitlement.

¶ 36 The complaint also sufficiently alleges that MLM sent valid notice of the assignment to Allstate. The notice of assignment was titled "Notice of Lien or Assignment of Proceeds." As described above, it stated that Martinez had assigned to MLM the proceeds of his personal injury claim in the amount of the sums paid for medical bills by MLM. It also listed Martinez as the injured party, stated the date of the accident, and named the tortfeasor. In addition, MLM attached both the account statement detailing the costs of treatment and the agreement itself. Furthermore, the notice of assignment stated in bold typeface "Issue All Payments To: Medical Lien Management, Inc." It then listed MLM's address. The attached account statement included a similar instruction—"Issue all payments to satisfy this account to: Medical Lien Management." Both the notice of assignment and account statement included MLM's telephone number.

¶ 37 Thus, we are persuaded that MLM has sufficiently alleged that it provided Allstate with adequate notice of the assignment. *See Prod. Credit Ass'n v. Alamo Ranch Co.*, 989 F.2d 413, 417 (10th Cir.1993) (finding adequate notice where assignee of accounts receivable of feedlots sent a letter to the owner of the cattle stating that the accounts receivable had been assigned); *BOC Grp., Inc. v. Katy Nat'l Bank*, 720 S.W.2d 229, 230-31 (Tex.App.1986) (holding that letter from the assignee of promissory note to the debtor, directing that all future payments be made to the assignee, accompanied by a copy of the security agreement, was sufficient to put the debtor on notice that the note had been assigned, requiring the debtor to make payments to the assignee).

¶ 38 We reject Allstate's assertion that, because the agreement only "authorizes" and does not "instruct" or "direct" the tortfeasor's insurance carrier to pay MLM directly, it could discharge its obligation by paying Martinez. Once a debtor receives notice of a valid assignment, it is required to pay the assignee. *Trevino*, 928 P.2d at 768-69. In other words, following a valid assignment, a debtor's obligation to pay the assignee in place of the assignor is triggered by the language of the notice, not the execution of the assignment. Furthermore, this argument ignores the assignment language contained in the agreement itself.

¶ 39 Contrary to Allstate's additional contention, the fact that it was not a party to the agreement between MLM and Martinez does not mean that Allstate cannot be held liable for failing to pay MLM. A debtor need not be a party to the agreement between an assignor and an assignee to be bound by it. As discussed above, after a valid assignment and adequate notice of the assignment, the debtor is obligated to pay the assignee and cannot discharge its obligation by paying the assignor. *Mid–States Sales Co.*, 741 P.2d at 347; *cf.* § 4–9–406(a).

¶ 40 Furthermore, it was not required that Allstate consent to the assignment of the proceeds of the settlement in order to be bound by it. *See Matson*, 122 Colo. at 84, 220 P.2d at 866 (concluding that a contract not involving personal skill, trust, or confidence is assignable without the consent of the debtor).

¶ 41 We reject Allstate's additional contention that, because the agreement also contains an "ordinary debt-repayment obligation," there is no effective assignment. It is true that Martinez remained obligated to pay MLM in the event he did not settle his claim or recover any money. However, Allstate has directed us to no authority, nor have we found any, holding that Martinez's continuing obligation to repay MLM somehow affects the validity of the assignment.

¶ 42 We also reject Allstate's contention that, because Martinez did not sign the *notice* of assignment, an integration and merger clause in the agreement rendered the notice ineffective. It is the assignment agreement itself that creates the assignment, not the notice.

¶ 43 Because an assignee stands in the shoes of the assignor, we must also ad-

dress whether MLM's complaint sufficiently alleges that Martinez could have brought a claim against Allstate. *Regency Realty Investors, LLC v. Cleary Fire Prot., Inc.,* 260 P.3d 1, 6 (Colo.App.2009). Contrary to Allstate's assertion, we conclude that, when viewed in the light most favorable to MLM, there are sufficient allegations that Martinez could have brought a claim against Allstate had Allstate failed to fund the settlement agreement.

¶ 44 The complaint asserts that "Martinez settled his personal injury claim against the at fault party insured by Allstate in October, 2008." The complaint also alleges that "Allstate issued payment to ... Martinez in disregard of the Assignment, Notice of Assignment and Attachments that Allstate received from MLM." Additionally, the complaint alleges that Allstate has not issued payment to MLM. This is sufficient to assert that Martinez had a claim at the time the proceeds became due that had been effectively assigned to MLM.

▪ ¶ 45 Allstate is correct that an insurer generally does not owe a duty to a third party injured by its insured. *Goodson v. Am. Standard Ins. Co.,* 89 P.3d 409, 414 (Colo.2004) ("The insurance company's duty of good faith and fair dealing extends only to the insured, not to the third[ ]party."). However, MLM does not allege a breach of Allstate's duty of good faith and fair dealing. Rather, MLM's complaint can be construed to allege that Allstate entered into a settlement agreement with Martinez regarding his personal injury claims against Allstate's insured. Accepting this allegation as true, the settlement agreement imposed a duty on Allstate to pay Martinez for his injuries. *See Yaekle v. Andrews,* 195 P.3d 1101, 1107 (Colo.2008) ("[A] settlement agreement can be governed by and found enforceable under common law contract principles.").

▪ ¶ 46 Because a settlement agreement is a contract, a nonbreaching party can sue to enforce the agreement. *See id.*; *Cross,* 643 P.2d at 41. If Allstate had not paid Martinez pursuant to the settlement, Martinez could have brought a direct action

against Allstate based on Allstate's promise to pay and a breach of Allstate's duty to perform under the settlement contract. Moreover, if the assignment to MLM of the proceeds from Martinez's personal claim is valid, MLM may bring suit against Allstate to enforce the settlement. *See U.S. Fax Law Ctr., Inc.,* 183 P.3d at 644.

¶ 47 In sum, viewing the allegations in the complaint in the light most favorable to MLM, we conclude that the trial court erred in granting Allstate's motion to dismiss for failure to state a claim.

## IV.   Cross–Appeal

▪ ¶ 48 Allstate asserts that, in deciding whether MLM has alleged facts sufficient to state a claim, we should apply the heightened pleading standard adopted by the United States Supreme Court in *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, and that the trial court erred in failing to do so. We disagree that *Twombly* provides the correct standard of review in this state.

¶ 49 We are bound by the decisions of the Colorado Supreme Court. *People v. Allen,* 111 P.3d 518, 519 (Colo.App.2004); *Bernal v. Lumbermens Mut. Cas. Co.,* 97 P.3d 197, 203 (Colo.App.2003). Colorado applies the notice pleading standard set forth in

¶ 50 *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *E.g., Dunlap,* 829 P.2d at 1291; *Davidson,* 180 Colo. at 131–32, 503 P.2d at 162. The Colorado Supreme Court has not adopted the more exacting Twombly standard. Therefore, we must apply the *Conley* standard.

¶ 51 The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

JUDGE STERNBERG * and JUDGE VOGT * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2012.